**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____

SUZANNE CARLSON,                    }
                                    }
          Appellant,                }
                                    }
     v.                             }     CIVIL ACTION NO. 05-10227-WGY
                                    }
UNITED STATES OF AMERICA            }
                                    }
          Appellee.                 }
_____}

### THE APPELLANT, SUZANNE CARLSON'S OPPOSITION TO THE APPELLEE'S MOTION TO AFFIRM THE APPEALS OFFICER'S DETERMINATION OR TO DISMISS THE APPEAL, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

The Appellant, Suzanne Carlson, opposes the Motion of the Appellee to Affirm the Appeals Officer's Determination or to Dismiss the Appeal, or in the alternative Motion for Summary Judgment.

As the Appellant's Opposition is more fully developed in her Memorandum of Law, the Appellee's Motion(s) is unsupportable as a matter of law.

For these reasons, the Appellant prays this honorable Court to:

1.   Deny the Appellee's Motion(s).

2.   Grant a remand for the Appellant.

3.   Any and all other remedies that this honorable Court deems appropriate.

Suzanne Carlson,
By her attorney,


/s/ Timothy J. Burke
Timothy J. Burke
Burke & Associates
400 Washington Street
Braintree, MA 02184
(781)380-0770


## CERTIFICATE OF SERVICE

It is hereby certified that a true copy of the above
document was served upon the attorney of record via first class
mail on May 6, 2005.


/s/ Timothy J. Burke

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUZANNE CARLSON, | } |
| | } |
| Appellant, | } |
| | } |
| v. | }    CIVIL ACTION NO. 05-10227-WGY |
| | } |
| UNITED STATES OF AMERICA | } |
| | } |
| Appellee. | } |

**THE APPELLANT, SUZANNE CARLSON'S MEMORANDUM OF LAW IN OPPOSITION TO THE APPELLEE'S MOTION TO AFFIRM THE APPEALS OFFICER'S DETERMINATION OR TO DISMISS THE APPEAL, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

The Appellant, Suzanne Carlson, submits this memorandum of law in support of her opposition to the Appellee, the United States of America's Motion to Affirm the Appeals Officer's Determination or to Dismiss the Appeal, or in the alternative Motion for Summary Judgment.

I.   Procedural History.

The Appellant Suzanne Carlson ("Ms. Carlson") seeks judicial review pursuant to Section 6330(d) of the Internal Revenue Code, of the Appeals Officer's Determination to sustain the United States Notice of Federal Tax Lien and its Notice of Intent to Levy.

II.  Facts.

On June 23, 2004 the Internal Revenue Service sent Ms. Carlson a "Final Notice, Notice of Intent to Levy and Notice of

1

Your Right to a Hearing."

On July 23, 2004 and within the thirty day period allowed by law, the Appeals Office for the Internal Revenue Service received Ms. Carlson's Form 12153 Request for a Collection Due Process Hearing ("CDP Hearing" or "Hearing").

On October 14, 2004 a face-to-face conference was held at the Boston Appeals Office with Appeals Officer Lisa Boudreau ("Ms. Boudreau") wherein the parties discussed the possibility of an Offer-in-Compromise (an "OIC").

In order to qualify for an OIC as a collection alternative taxpayers must be current with their filing of individual federal tax returns, at the time of the Hearing, Ms. Carlson was not.

Ms. Carlson was given until November 30, 2004 to file original forms 1040 for the 2000, 2001, 2002 and 2003 calendar years, completed collection information statements with all required attachments (business and personal), a breakdown of her income during the period from January 1, 2004 through November 30, 2004 including any payments of the required estimated tax for the first three quarters of 2004 and a completed Form 656 "Offer-in-Compromise."

On November 23, 2004, Ms. Carlson requested an additional thirty days to complete the accounting for her personal and corporate returns.

At such time, Ms. Carlson was able to reconcile the two largest bank accounts and made substantial progress towards completing her accounting records.  However, due to unfortunate and unforeseeable personal events Ms. Carlson was unable to satisfy all of the Service's requests for information within the six week time frame given to her at the Hearing.

Ms. Boudreau refused to grant an additional thirty days and based her determination on the information available to her as of November 30, 2004.

On January 5, 2005 the Internal Revenue Service issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330.

III. <u>Law and Argument</u>.

1.    <u>Standard of Review</u>.

The Restructuring and Reform Act of 1998 created Collection Due Process Hearings and provides that a taxpayer may appeal a decision from a CDP Hearing within 30 days.  <u>See, 26 U.S.C. § 6330(d)</u>.

The statute is silent as to the appropriate standard for reviewing such determinations. Moreover, because the law was only recently enacted, the issue of the applicable standard of review has not yet been decided by the First Circuit.

The legislative history accompanying the statute, however, indicates that where, as here, the appellant's underlying tax

liability is not at issue, "the appeals officer's determination as to the appropriateness of the collection activity will be reviewed using an abuse of discretion standard of review." H. Rep. No. 105-599 at 266 (1998).

Citing this language in the House Conference Report, other courts have evaluated 6 decisions by appeals officers at collection due process hearings under the abuse of discretion standard. See, e.g., Dudley's Commercial and Industrial Coating, Inc. v. United States, 292 F.Supp.2d 976, 985 (M.D. Tenn. 2003); Kitchen Cabinets, Inc. v. United States, 2001 WL 237384 *2 (N.D. Tex. 2001); TTK Management v. United States, 2000 WL 33122706 *1-2 (C.D.Cal. 2000). The abuse of discretion standard employed by these courts is not only supported by the legislative history, it is also consistent with the standard articulated in other statutes providing for judicial review of administrative decisions. See, MCRA Information Services v. United States, 145 F.Supp.2d 194, 199 n. 8 (citing the abuse of discretion standard adopted by Congress in the Administrative Procedure Act, 5 U.S.C. § 706(2)).

   2.   Issues for Review.

In PBG Corp. v. LTV Corp., 496 U.S. 633 (1990), the Supreme Court reviewed a decision of the Pension Benefit Guaranty Corporation ("PBGC") to restore certain pension plans under §4047 of the Employee Retirement Income Security Act of 1974 ("ERISA").

In overruling the Appeals Court's decision that PBGC actions violated §706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §706., the Court stated:

> In <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council</u>, Inc., 467 U.S. 837 (1984), we set forth the general principles to be applied when federal courts review an agency's interpretation of the statute it implements: When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. **If the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress**.

> <u>PBG Corp.</u>, supra at 647 & 648.

In the present matter the unambiguously expressed intent of Congress was stated in the Committee Reports to the Revenue Restructuring act of 1998. In enacting the Revenue Restructuring Act of 1998 Congress specifically intended to grant "Protections for Taxpayers Subject to Audit or Collection Activities."(Please see relevant sections of the Committee Reports included in the Addendum).

The Committee Reports, <u>H. Rep. 105-599</u>, from the Revenue Restructuring Act of 1998 state as follows (Addendum):

CONFERENCE AGREEMENT

LEVIES
...
If a hearing is requested within the 30-day period, no levy could occur until a determination by the appeals officer is rendered. In general, any issue that is relevant to the appropriateness of the proposed collection against the taxpayer can be raised at the pre-levy hearing. For example, the taxpayer can request innocent spouse status, make an offer-in-compromise, request an installment agreement or

5

suggest which assets should be used to satisfy the tax
liability.

...

JUDICIAL REVIEW
The conferees expect the appeals officer will prepare a
written determination addressing the issues presented by the
taxpayer and considered at the hearing. The determination of
the appeals officer may be appealed to Tax Court or, where
appropriate, the Federal district court. Where the validity
of the tax liability was properly at issue in the hearing,
and where the determination with regard to the tax liability
is a part of the appeal, no levy may take place during the
pendency of the appeal. The amount of the tax liability will
in such cases be reviewed by the appropriate court on a de
novo basis. Where the validity of the tax liability is not
properly part of the appeal, the taxpayer may challenge the
determination of the appeals officer for abuse of
discretion. In such cases, the appeals officer's
determination as to the appropriateness of collection
activity will be reviewed using an abuse of discretion
standard of review.

Congress' view of Offers was also clearly stated in the

same Committee Reports (Addendum):

The conferees believe that the ability to compromise tax
liability and to make payments of tax liability by
installment enhances taxpayer compliance. In addition, the
conferees believe that the IRS should be flexible in finding
ways to work with taxpayers who are sincerely trying to meet
their obligations and remain in the tax system. Accordingly,
the conferees believe that the IRS should make it easier for
taxpayers to enter into offer-in-compromise agreements.

The intentions of Congress in enacting Internal Revenue Code

Section 6330 were to "Protect Taxpayers Subject to Audit or

Collection Activities", to grant taxpayers an impartial hearing

at which they can file an Offer in Compromise and instruct the

Service that it "should be flexible in finding ways to work with

taxpayers who are sincerely trying to meet their obligations and

6

remain in the tax system" and to "make it easier for taxpayers to enter into offer-in-compromise agreements."

The ultimate issues for review include whether the settlement officer was impartial (considered de novo by the Court. <u>MRCA Information Services, Inc. v. Commissioner</u>, 145 F. Supp. 2d 194 (D. Conn. 2000)); whether the Service was "flexible in finding ways to work with the" Plaintiff; whether the Service has made "it easier for taxpayers to enter into offer-in-compromise agreements" since the date of the enactment of the Revenue Restructuring Act of 1998; and, "whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary."

3.   <u>The Record is Inadequate</u>.

The Administrative Record and Determination Letter of Ms. Boudreau are inadequate.  Ms. Boudreau does not cite any Internal Revenue Manual, Revenue regulation or procedure to justify her determination that a reasonable time of six weeks was allowed and that no further time need be granted for Ms. Carlson to prepare the requisite information to make an offer-in-compromise. Additionally, the Service has not included a copy or transcript of the recorded Hearing.  (The Plaintiff is in the process of filing a motion to address this shortcoming.)

The necessity for an adequate record has been emphasized by

several reviewing Courts.  The Court in <u>Mesa Oil, Inc., v. United States of America</u>, 86 A.FTR 2d 2000-7312, 2000-1 USTC par. 50130 (D.Colo. Nov. 21, 2000) stated:

> While a full stenographic record is not required, there must be enough information contained in the documentation created by the IRS for a court to draw conclusions about statutory compliance and whether the AO abused his or her discretion. Here, the scant letters and Notice of Determination make those tasks difficult if not impossible.  The government's own arguments illustrate this problem.  It asserts, for example, that Mesa points to no evidence or argument offered at the due process hearing which was ignored by the AO.  Yet the lack of record makes it impossible to tell what was discussed at the hearing, and what factors were considered by the AO in making her Determination.  Thus, the lack of a record erodes Mesa's statutory right to judicial review, in violation of I.R.C. Section 6330(d)(1)(B).

<u>Mesa Oil</u>, at [*18] and [*19].

The Court having decided that there was "no indication that the AO actually engaged in the required analysis prior to making her Determination" ordered a remand "for consideration of the appropriate factors and a fully elucidated Determination that explains the reasons for the conclusion." <u>Id</u>. at [*19]. Likewise, other federal district courts have adopted the position taken by <u>Mesa Oil</u> with respect to the adequacy of the record as required by Section 6330(c).

In <u>Muhammad v. United States</u>, 2003-2 USTC para. 50,647 (2003), a pro se Plaintiff contested a frivolous return penalty imposed under IRC Section 6702 at his CDP Hearing.  The Court, citing <u>Mesa Oil</u> regarding the sufficiency of the record on review, stated:

8

However, while the Appeals Officer may have been justified in not proceeding with the hearing, Plaintiff also appears to allege that the administrative record alone is inadequate to sustain the hearing officer's decision. *Mesa Oil, Inc. v. United States* [2000-1 USTC para. 50,130], 00:851, 2000 WL 1745280 (D.Colo. Nov. 21, 2000). After careful review of the material before this Court, the undersigned is constrained to agree... The Court held in *Mesa Oil* that the record was not sufficiently complete to enable a review of the determination, finding that the determination "gave no statement of facts, no legal analysis, and no explanation of how or why the proposed levy balanced the need for levy with Mesa's interests." *Mesa Oil*, at *4.

<u>Muhammad</u>, at P. 50,647.

Also, in <u>Borges v. United States</u>, 317 F.Supp. 2d 1276, 1277 (2004), Plaintiffs challenged the IRS Appeals' approval of a levy against their assets to collect delinquent unemployment taxes. As discussed by the Court, Plaintiffs averred that a number of errors were made and therefore the Appeals Officer did not satisfy her statutory requirements, stating:

Plaintiffs contend that even though they questioned whether IRS records of their tax liabilities were accurate, the Appeals Officer issued her decision rejecting Plaintiffs' proposed collection alternatives prior to determining the correct amount of taxes due. As a result, the Appeals Officer determined that Plaintiffs were not financially able to pay an installment plan based, in part, on the erroneous determination that Plaintiffs owed $709,431.70 in taxes, including over $170,000 in pre-petition taxes, when Plaintiffs' pre-petition taxes had been paid in full.

<u>Borges</u>, at 1282.

. . .

The record before the Court is insufficient to determine what financial analysis was performed by the Appeals Officer. On remand, IRS Appeals is instructed to prepare a record that contains sufficient information on the financial analysis undertaken by the Appeals Officer to permit this

9

court to determine if the Appeals Officer abused his or her
discretion.

Id. at 1284.

Without a sufficient record, proper statutory review is
effectively denied upon a subsequent judicial appeal.  See,
Nicklaus v. Commissioner, 117 T.C. 117, 120 (2001).

The inadequacy of the record requires that the matter be
remanded.

4.    The Service Did Not Attempt to Resolve the Matter in
      Good Faith.

In finding a balanced analysis for the unobtrusive
collection of taxes, the Mesa Oil Court stated, "IRC Section
6330(c)(3) requires that the AO balance the IRS's concerns
regarding collection with the taxpayer's concerns regarding
intrusion.  Both the statute and the courts are silent on what
factors must be considered in that analysis." Mesa Oil, at
[*13]. In instances where the statute is silent, as with the
Section 6330 factors that must be considered for proper analysis
by the Appeals Officer, courts must engage in statutory
construction.  In applying a statutory construction of Section
6330 to the facts, the Mesa Oil Court criticized the AO's literal
application of the statute:

    In her Determination, the AO recites that applicable law and
    procedure have been followed, but does not address whether
    the collection officer considered appropriate factors given
    that Mesa Oil is an on-going business.  The AO next states
    that "the proposed collection action balances the need for
    the efficient collection of taxes with the legitimate

10

concern of the taxpayer that the collection action be no
more intrusive than necessary... The AO gives no statement
of facts, no legal analysis, and no explanation of how or
why the proposed levy balanced the need for collection with
Mesa's interest.  The AO's declaration, written nine months
after the hearing in this case, sheds no further light on
the topic... The Determination's blank recitation of the
statute gives no indication that the "proposed collection
action [was] approved solely because the IRS show[ed] that
it ha[d] followed appropriate procedures." S. Rep. No. 105-
174.

Id. at [*18].

The inadequacy of the both the Determination letters and the
administrative record does not provide sufficient information as
to the reason of the reasons why the Service failed to grant the
necessary additional time to the Plaintiff. The paucity of
information however, evidences a predisposition of the Service to
summarily dispose of the issues before it. There is no
information which supports the notion that the Service would be
damaged by the additional time which was required to prepare the
requisite returns. In fact, the expanded record will reflect the
taxpayer's testimony as to her dire financial situation.

These facts lead to a sole conclusion that the Service acted
to expeditiously close this matter for its administrative
convenience in derogation of the rights granted to the Plaintiff.


5.    The Service Abused its Discretion.

Ms. Boudreau abused her discretion for failing to provide a
full, fair and impartial hearing due to her bias against the

11

taxpayer.

The rules and procedures governing the Service's processing of Offers are largely contained in the Internal Revenue Manual.

The portion of the Internal Revenue Manual which governs OIC's, Section 5.8.1.1 (11-30-2001), states as follows:

1.  The government, like other creditors, encounters situations where an account receivable cannot be collected in full or there is a legitimate dispute as to what is owed.  It is an accepted business practice to resolve these issues through negotiation and compromise.

Ms. Boudreau did not negotiate with Ms. Carlson because she gave no consideration to Ms. Carlson's request for an additional thirty days to complete all of the requisite returns and financial statements necessary for her offer-in-compromise.

Clearly, granting an extension of time in which a taxpayer can resolve her compliance issues in order to submit an alternative to collection action is "no more intrusive than necessary" when "balanc[ing] the need for efficient collection of taxes with the legitimate concern of the person."

Ms. Boudreau based her determination to sustain collection action on the information she had up to November 30, 2004, knowing that no collection alternative would not be processable based on said information.

In her letter to Ms. Carlson dated November 30th, Ms. Boudreau states that the six weeks given to provide her with the requested information "was a reasonable time frame and no

additional extension is being granted."

Ms. Boudreau had no reason to believe that the Service could collect because no determination as to collectibility was made in order for Ms. Boudreau to conclude that "[f]iling of the Notice of Federal Tax Lien and issuance of the Final Notice and the proposed levy action are necessary to provide for the efficient collection of the taxes despite the potential intrusiveness of enforced collection."

"Reasonable" is not defined in the Internal Revenue Code or its Regulations with respect to Collection Due Process Proceedings.  However, reasonableness has been considered in other instances with respect to "time".

Section 1.6081-1. Extension of Time For Filing Returns, states:

> (a)   In General.  The Commissioner is authorized to grant a reasonable extension of time for filing any return, declaration, statement or other document which relates to any tax imposed by subtitle A of the Code... However... such extensions of time shall not be granted for more than 6 months...

With respect to entity classification, Rev. Proc. 2002-59 states:

> The Commissioner has authority under section 301.9100-1 and section 301-9100-3 to grant an extension of time if a taxpayer fails to file a timely election under section 301-7701-3.  Section 301.9100-3 provides that the Commissioner will grant an extension of time when the taxpayer provides the evidence to establish to the satisfaction of the Commissioner that the taxpayer has acted reasonably and in good faith, and the grant of relief will not prejudice the interests of the government.

. . .

> This revenue procedure modifies and supercedes Rev. Proc.
> 2002-15 by, in particular, extending the time for filing a
> late initial entity classification election from six months
> to the due date for the federal tax return...

Further guidance may be illustrated by the definition of "reasonable cause" when used with respect to the abatement of penalties.

Section 1.6664-4 states that "the determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances."

Under Sections 6651(a)(2) and 6656(a) taxpayers who fail to deposit or pay employment taxes by the statutorily-prescribed deadline can face mandatory penalties unless the failure was due to "reasonable cause and not due to willful neglect."

In <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985) the Supreme Court defined "willful neglect" as "conscious, intentional failure or reckless indifference.

In <u>Francis P. Harvey & Sons, Inc. v. Internal Revenue Service</u>, 2004 U.S. Dis. LEXIS 25847 (D.Mass., 2004) the Court stated:

> Whereas the definition of "willful neglect" is fairly well-
> settled, there is a good deal of controversy surrounding the
> definition of "reasonable cause" in sections 6651 and 6656
> of the Code.  The Treasury regulations provide some insight
> into the meaning of reasonable cause.

They state, in pertinent part, as follows:

14

If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause.  A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an under hardship if he paid on the due date.

Taking all of the facts and circumstances into consideration, providing Ms. Carlson with an extension of 30 days time would have been a far more efficient means of promoting "effective tax administration" than sustaining collection action where "reasonable collection potential" had not yet been determined.  See, IRM 5.8.11.2.1(4).

For lack of a more definitive standard, Ms. Carlson's inability to compile and prepare all of the necessary information in six weeks time to make an offer-in-compromise was due to reasonable cause and not willful neglect.

The letter dated November 23, 2004 clearly indicated that Ms. Carlson's inability was due to personal unforeseeable events that required her immediate attention during that six week period.

Ms. Carlson's ability to reconcile two of her largest bank accounts shows that she acted in good faith and intended to provide all of the necessary documentation to reach an alternative to collection activity.

Ms. Boudreau did not grant an extension because she had a

bias against Ms. Carlson.

Not only did Ms. Boudreau neglect to "balance the need for efficient collection of taxes with the legitimate concern of the person," she failed a primary goal of "determining whether there is a bonafide doubt as to liability or doubt as to collectibility" because she lacked significant information necessary to make that a determination. CCDM 34.5.2.1(3)(a).

Furthermore, Section 6330(c)(1)(Requirement of Investigation) referencing Section 6330(c)(3)(A)(Basis for the Determination, states that "the Appeals Officer shall at the hearing obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met."

The Chief Counsel Directives Manual, Part 34, Chapter 5 (CCDM 34.5) in relevant part states that "the permissible bases for compromise have since been expanded in the regulations to include the promotion of effective tax administration," wherein "verifying that a basis for compromise is present continues to be the most important part" of review.

Here, Ms. Boudreau did not verify whether or not a legal basis for an offer-in-compromise existed because she truncated Ms. Carlson's ability to even present an Offer. Congress clearly states that the IRS "should be flexible in finding ways to work with taxpayers who are sincerely trying to meet their obligations

16

and remain in the tax system" and to "make it easier for taxpayers to enter into Offer-in-compromise agreements."

IV. <u>Conclusion.</u>

The Appellee's Motion(s) are unsupported in fact and in law and are properly denied.

A remand of the action is properly granted.

> Suzanne Carlson,
> By her attorney,
>
>
>
> /s/ Timothy J. Burke
>     Timothy J. Burke
> Burke & Associates
> 400 Washington Street
> Braintree, MA 02184
> (781)380-0770

**<u>CERTIFICATE OF SERVICE</u>**

It is hereby certified that a true copy of the above document was served upon the attorney of record via first class mail on May 6, 2005.

> /s/ Timothy J. Burke

17

**ADDENDUM**

H. Rep. 105-599:  INTERNAL REVENUE SERVICE RESTRUCTURING AND REFORM
ACT OF 1998 (Protections for Taxpayers Subject to Audit or Collection
Activities)

Link to Table of Contents

    E. PROTECTIONS FOR TAXPAYERS SUBJECT TO AUDIT OR COLLECTION ACTIVITIES

        1. Due process in IRS collection actions (sec. 3401 of the Senate
amendment)

                            PRESENT LAW

    Levy is the IRS's administrative authority to seize a taxpayer's
property to pay the taxpayer's tax liability. The IRS is entitled to seize
a taxpayer's property by levy if the Federal tax lien has attached to such
property. The Federal tax lien arises automatically where (1) a tax
assessment has been made, (2) the taxpayer has been given notice of the
assessment stating the amount and demanding payment, and (3) the taxpayer
has failed to pay the amount assessed within 10 days after the notice and
demand.

    The IRS may collect taxes by levy upon a taxpayer's property or rights
to property (including accrued salary and wages) if the taxpayer neglects
or refuses to pay the tax within 10 days after notice and demand that the
tax be paid. Notice of the IRS's intent to collect taxes by levy must be
given no less than 30 days (90 days in the case of a life insurance
contract) before the day of the levy. The notice of levy must describe the
procedures that will be used, the administrative appeals available to the
taxpayer and the procedures relating to such appeals, the alternatives
available to the taxpayer that could prevent levy, and the procedures for
redemption of property and release of liens.

    The effect of a levy on salary or wages payable to or received by a
taxpayer is continuous from the date the levy is first made until it is
released.

    If the IRS district director finds that the collection of any tax is
in jeopardy, collection by levy may be made without regard to either notice
period. A similar rule applies in the case of termination assessments.

                            HOUSE BILL

    No provision.

                          SENATE AMENDMENT

    The Senate amendment establishes formal procedures designed to insure
due process where the IRS seeks to collect taxes by levy (including by
seizure). The due process procedures also apply after the Federal tax lien

attaches, but before the notice of the Federal tax lien has been given to the taxpayer.

As under present law, notice of the intent to levy must be given at least 30 days (90 days in the case of a life insurance contract) before property can be seized or salary and wages garnished. During the 30-day (90-day) notice period, the taxpayer may demand a hearing to take place before an appeals officer who has had no prior involvement in the taxpayer's case. If, within that period, the taxpayer demands a hearing, the proposed collection action may not proceed until the hearing has concluded and the appeals officer has issued his or her determination.

During the hearing, the IRS is required to verify that all statutory, regulatory, and administrative requirements for the proposed collection action have been met. IRS verifications are expected to include (but not be limited to) showings that:

(1) the revenue officer recommending the collection action has verified the taxpayer's liability;

(2) the estimated expenses of levy and sale will not exceed the value of the property to be seized;

(3) the revenue officer has determined that there is sufficient equity in the property to be seized to yield net proceeds from sale to apply to the unpaid tax liabilities; and

(4) with respect to the seizure of the assets of a going business, the revenue officer recommending the collection action has thoroughly considered the facts of the case, including the availability of alternative collection methods, before recommending the collection action.

The taxpayer (or affected third party) is allowed to raise any relevant issue at the hearing. Issues eligible to be raised include (but are not limited to):

(1) challenges to the underlying liability as to existence or amount;

(2) appropriate spousal defenses;

(3) challenges to the appropriateness of collection actions; and

(4) collection alternatives, which could include the posting of a bond, substitution of other assets, an installment agreement or an offer-in-compromise.

Once the taxpayer has had a hearing with respect to an issue, the taxpayer would not be permitted to raise the same issue in another hearing.

The determination of the appeals officer is to address whether the

proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary.

The taxpayer may contest the determination of the appellate officer in Tax Court by filing a petition within 30 days of the date of the determination. The IRS may not take any collection action pursuant to the determination during such 30-day period or while the taxpayer's contest is pending in Tax Court.

IRS Appeals would retain jurisdiction over its determinations. IRS Appeals could enter an order requiring the IRS collection division to adhere to the original determination. In addition, the taxpayer would be allowed to return to IRS Appeals to seek a modification of the original determination based on any change of circumstances.

In the case of a continuous levy, the due process procedures would apply to the original imposition of the levy.

This provision does not apply in the case of jeopardy and termination assessments. Jeopardy and termination assessments would be subject to post-seizure review as part of the Appeals determination hearing as well as through any existing judicial procedure. A jeopardy or termination assessment must be approved by the IRS District Counsel responsible for the case. Failure to obtain District Counsel approval would render the jeopardy or termination assessment void.

EFFECTIVE DATE: The due process procedures apply to collection actions initiated more than six months after the date of enactment.

CONFERENCE AGREEMENT

LIENS

The conference agreement generally follows the Senate amendment, except that taxpayers would have a right to a hearing after the Notice of Lien is filed. The IRS would be required to notify the taxpayer that a Notice of Lien had been filed within 5 days after filing. During the 30-day period beginning with the mailing or delivery of such notification, the taxpayer may demand a hearing before an appeals officer who has had no prior involvement with the taxpayer's case. In general, any issue relevant to the appropriateness of the proposed collection against the taxpayer can be raised at this hearing. For example, the taxpayer can request innocent spouse status, make an offer-in-compromise, request an installment agreement or suggest which assets should be used to satisfy the tax liability. However, the validity of the tax liability can be challenged only if the taxpayer did not actually receive the statutory notice of deficiency or has not otherwise had an opportunity to dispute the liability. This hearing right applies only after the first Notice of Lien with regard to each tax liability is filed.

LEVIES

The conference agreement includes a modified form of the Senate amendment. The IRS would be required to provide the taxpayer with a 'Notice of Intent to Levy,' formally stating its intention to collect a tax liability by levy against the taxpayer's property or rights to property. The conferees intend that the Secretary have the discretion to provide the Notice of Intent to Levy in combination with the notice required by present law under section 6331(d). Service by registered or certified mail, return receipt requested would be required. The Notice of Intent to Levy would not be required to itemize the property the Secretary seeks to levy on.

Subject to the exceptions noted below, no levy could occur within the 30-day period beginning with the mailing of the 'Notice of Intent to Levy.' During that 30-day period, the taxpayer may demand a hearing before an appeals officer who has had no prior involvement with the taxpayer's case, other than in connection with a hearing after the filing of a notice of tax lien. If a hearing is requested within the 30-day period, no levy could occur until a determination by the appeals officer is rendered. In general, any issue that is relevant to the appropriateness of the proposed collection against the taxpayer can be raised at the pre-levy hearing. For example, the taxpayer can request innocent spouse status, make an offer-in-compromise, request an installment agreement or suggest which assets should be used to satisfy the tax liability. However, the validity of the tax liability can be challenged only if the taxpayer did not actually receive the statutory notice of deficiency or has not otherwise had an opportunity to dispute the liability.

If a return receipt is not returned, the Secretary may proceed to levy on the taxpayer's property or rights to property 30 days after the Notice of Intent to Levy was mailed. The Secretary must provide a hearing equivalent to the pre-levy hearing if later requested by the taxpayer. However, the Secretary is not required to suspend the levy process pending the completion of a hearing that is not requested within 30 days of the mailing of the Notice. If the taxpayer did not receive the required notice and requests a hearing after collection activity has begun, then collection shall be suspended and a hearing provided to the taxpayer.

The conferees anticipate that the IRS will combine Notice of Intent to Levy and Notice of Lien hearings whenever possible. If multiple hearings are held, it is expected that, to the extent practicable, the same appellate officer will hear the taxpayer with regard to both lien and levy issues. If the taxpayer requests a hearing following receipt of a Notice of Lien or Notice of Intent to Levy and, prior to the date of the hearing, receives the other notice, the scheduled hearing will serve for both purposes and the taxpayer is obligated to raise all relevant issues at such hearing.

JUDICIAL REVIEW

The conferees expect the appeals officer will prepare a written determination addressing the issues presented by the taxpayer and considered at the hearing. The determination of the appeals officer may be appealed to Tax Court or, where appropriate, the Federal district court. Where the

validity of the tax liability was properly at issue in the hearing, and where the determination with regard to the tax liability is a part of the appeal, no levy may take place during the pendency of the appeal. The amount of the tax liability will in such cases be reviewed by the appropriate court on a de novo basis. Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion. In such cases, the appeals officer's determination as to the appropriateness of collection activity will be reviewed using an abuse of discretion standard of review. Levies will not be suspended during the appeal if the Secretary shows good cause why the levy should be allowed to proceed.

No further hearings are provided under this provision as a matter of right. It is the responsibility of the taxpayer to raise all relevant issues at the time of the pre-levy hearing. A taxpayer could apply for consideration of new information, make an offer-in-compromise, request an installment agreement, or raise other considerations at any time before, during, or after the Notice of Intent to Levy hearing. However, after the 30 day period had expired, the IRS is not required to provide a hearing or delay any levy or sale of levied property. Nothing in this provision is intended to limit any remedy that is otherwise available under present law.

An exception to the general rule prohibiting levies during the 30-day period would apply in the case of state tax offset procedures, and in the case of jeopardy or termination assessments.

PRIOR JUDICIAL APPROVAL REQUIRED FOR SEIZURES OF PRINCIPAL RESIDENCES

No seizure of a dwelling that is the principal residence of the taxpayer or the taxpayer's spouse, former spouse, or minor child would be allowed without prior judicial approval. Notice of the judicial hearing must be provided to the taxpayer and family members residing in the property. At the judicial hearing, the Secretary would be required to demonstrate (1) that the requirements of any applicable law or administrative procedure relevant to the levy have been met, (2) that the liability is owed, and (3) that no reasonable alternative for the collection of the taxpayer's debt exists.

EFFECTIVE DATE

The provision is effective for collection actions initiated more than 180 days after the date of enactment.

    2. Examination activities

        a. Uniform application of confidentiality privilege to taxpayer communications with federally authorized practitioners (sec. 341 of the House bill and sec. 3411 of the Senate amendment)

PRESENT LAW

A common law privilege of confidentiality exists for communications

between an attorney and client with respect to the legal advice the attorney gives the client. Communications protected by the attorney-client privilege must be based on facts of which the attorney is informed by the taxpayer, for the purpose of securing the professional advice of the attorney. The privilege may not be claimed where the purpose of the communication is the commission of a crime or tort. The taxpayer must either be a client of the attorney or be seeking to become a client of the attorney.

The privilege of confidentiality applies only where the attorney is advising the client on legal matters. It does not apply in situations where the attorney is acting in other capacities. Thus, a taxpayer may not claim the benefits of the attorney-client privilege simply by hiring an attorney to perform some other function. For example, if an attorney is retained to prepare a tax return, the attorney-client privilege will not automatically apply to communications and documents generated in the course of preparing the return.

The privilege of confidentiality also does not apply where the communication is made for further communication to third parties. For example, information that is communicated to an attorney for inclusion in a tax return is not privileged because it is communicated for the purpose of disclosure. The privilege of confidentiality does not apply where an attorney is acting in another capacity, or where an attorney who is licensed to practice another profession is performing such other profession.

The attorney-client privilege is considered waived if the communication is voluntarily disclosed to anyone other than the attorney, the client or the agents of the client or the attorney.

The attorney-client privilege is limited to communications between taxpayers and attorneys. No equivalent privilege is provided for communications between taxpayers and other professionals authorized to practice before the Internal Revenue Service, such as accountants or enrolled agents.

HOUSE BILL

The House bill extends the present law attorney-client privilege of confidentiality to tax advice that is furnished by any individual who is authorized to practice before the Internal Revenue Service, acting in a manner consistent with State law for such individual's profession, to a client-taxpayer (or potential client-taxpayer) in any noncriminal proceeding before the Internal Revenue Service.

The House bill does not modify the attorney-client privilege. Accordingly, except for criminal proceedings, the privilege of confidentiality under this provision applies in the same manner and with the same limitations as the attorney-client privilege of present law.

EFFECTIVE DATE.--The provision is effective with regard to communications made on or after the date of enactment.

SENATE AMENDMENT

The Senate amendment extends the present law attorney-client privilege of confidentiality to tax advice that is furnished to a client-taxpayer (or potential client-taxpayer) by any individual who is authorized under Federal law to practice before the IRS if such practice is subject to regulation under section 330 of Title 31, United States Code. Individuals subject to regulation under section 330 of Title 31, United States Code include attorneys, certified public accountants, enrolled agents and enrolled actuaries. Tax advice means advice that is within the scope of authority for such individual's practice with respect to matters under Title 26 (the Internal Revenue Code). The privilege of confidentiality may be asserted in any noncriminal tax proceeding before the IRS, as well as in noncriminal tax proceedings in the Federal Courts where the IRS is a party to the proceeding.

The provision allows taxpayers to consult with other qualified tax advisors in the same manner they currently may consult with tax advisors that are licensed to practice law. The provision does not modify the attorney-client privilege of confidentiality, other than to extend it to other authorized practitioners. The privilege established by the provision applies only to the extent that communications would be privileged if they were between a taxpayer and an attorney. Accordingly, the privilege does not apply to any communication between a certified public accountant, enrolled agent, or enrolled actuary and such individual's client (or prospective client) if the communication would not have been privileged between an attorney and the attorney's client or prospective client. For example, information disclosed to an attorney for the purpose of preparing a tax return is not privileged under present law. Such information would not be privileged under the provision whether it was disclosed to an attorney, certified public accountant, enrolled agent or enrolled actuary.

The privilege granted by the provision may only be asserted in noncriminal tax proceedings before the IRS and in the Federal Courts with regard to such noncriminal tax matters in proceedings where the IRS is a party. The privilege may not be asserted to prevent the disclosure of information to any regulatory body other than the IRS. The ability of any other regulatory body, including the Securities and Exchange Commission (SEC), to gain or compel information is unchanged by the provision. No privilege may be asserted under this provision by a taxpayer in dealings with such other regulatory bodies in an administrative or court proceeding.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment with a modification. The privilege of confidentiality created by this provision will not apply to any written communication between a federally authorized tax practitioner and any director, shareholder, officer, employee, agent, or representative of a corporation in connection with the promotion of the direct or indirect participation of such corporation in any tax shelter (as defined in section 6662(d)(2)(C)(iii)).

A tax shelter for this purpose is any partnership, entity, plan, or

arrangement a significant purpose of which is the avoidance or evasion of income tax. Tax shelters for which no privilege of confidentiality will apply include, but are not limited to, those required to be registered as confidential corporate tax shelter arrangements under section 6111(d). The Conferees do not understand the promotion of tax shelters to be part of the routine relationship between a tax practitioner and a cpt for criminal proceedings, the privilege of confidentiality under this provision applies in the same manner and with the same limitations as the attorney-client privilege of present law.

EFFECTIVE DATE.--The provision is effective with regard to communications made on or after the date of enactment.

                    SENATE AMENDMENT

    The Senate amendment extends the present law attorney-client privilege of confidentiality to tax advice that is furnished to a client-taxpayer (or potential client-taxpayer) by any individual who is authorized under Federal law to practice before the IRS if such practice is subject to regulation ulient. Accordingly, the Conferees do not anticipate that the tax shelter limitation will adversely affect such routine relationships.

    The privilege created by this provision may be waived in the same manner as the attorney-client privilege. For example, if a taxpayer or federally authorized tax practitioner discloses to a third party the substance of a communication protected by the privilege, the privilege for that communication and any related communications is considered to be waived to the same extent and in the same manner as the privilege would be waived if the disclosure related to an attorney-client communication.

    The conference agreement also clarifies that the privilege created by this provision may be asserted in noncriminal tax proceedings before the IRS and in the Federal courts with regard to a noncriminal tax proceeding where the United States is a party.

    This provision relates only to matters of privileged communications. No inference is intended as to whether aspects of federal tax practice covered by the new privilege constitute the authorized or unauthorized practice mic reality examination techniques to determine the existence of unreported income in appropriate circumstances.

                    HOUSE BILL

    The provision prohibits the IRS from using financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the IRS has a reasonable indication that there is a likelihood of unreported income.

EFFECTIVE DATE: Date of enactment.

                    SENATE AMENDMENT

Same as the House bill.

CONFERENCE AGREEMENT

The conference agreement follows the House bill and the Senate amendment.

c. Software trade secrets protection (sec. 344 of the House bill and sec. 3413 of the Senate amendment)

PRESENT LAW

The Secretary of the Treasury is authorized to examine any books, papers, records, or other data that may be relevant or material to an inquiry into the correctness of any Federal tax return. The Secretary may issue and serve summonses necessary to obtain such data, including summonses on certain third-party recordkeepers.

The Secretary is considered to have made a prima facie case for the enforcement of a summons if the so-called 'Powell standards' are met. <17> The Powell standards require: (1) that the examination to which the summons relates is being conducted pursuant to a legitimate purpose; (2) that the summons seek information that may be relevant to such examination; (3) that the IRS not already be in possession of the information; and (4) that the administrative steps required by the Code have been followed. However, a summons will not be enforced if the burden it places on the summonsed party is out of proportion to the end sought. <18> Where the summons is issued against a third-party, particularly one that is a stranger to the taxpayer's affairs, the IRS has been required to show that the circumstances of the investigation indicate a realistic expectation, and not merely an idle hope, that something relevant to the investigation may be discovered in order to have the summons enforced. <19>

_____

17/ See Powell v. U.S., 379 U.S. 48 (1964).

18/ Harrington v. U.S., 388 F. 2d 520 (2nd Cir, 1968).

19/ Harrington, supra.

_____

There are no specific statutory restrictions on the ability of the Secretary to demand the production of computer records, programs, source code or similar materials; whether held by the taxpayer or by a third-party.

HOUSE BILL

The House bill prohibits the Secretary from issuing (or beginning an action to enforce) a summons in a civil action for any portion of any third-

party tax-related computer source code unless (1) the Secretary is unable to otherwise reasonably ascertain the correctness of an item on a return from the taxpayer's other books, papers, records, other data, or the computer software program and associated data itself and (2) the Secretary first identifies with reasonable specificity the portion of the computer source code to be used to verify the correctness of the item.

The Secretary is considered to have satisfied these requirements with regard to the identified portion of the source code if the Secretary makes a formal request for such materials to both the taxpayer and the owner or developer of the software that is not satisfied within 90 days.

The Secretary's determination that the identified portion of the third-party tax-related computer source code may be summoned may be contested in any proceeding to enforce the summons, by any person to whom the summons is addressed. For this purpose, the special procedures for third-party summonses will apply. In any such proceeding, the court may issue any order that is necessary to prevent the disclosure of trade secrets or other confidential information.

The prohibition on issuing summons for tax-related computer source code does not apply in connection with any inquiry into any offense connected with the administration or enforcement of the internal revenue laws. A computer software program will not be treated as tax advice for the purpose of the professional-client privilege contained in section 341 of the House bill.

EFFECTIVE DATE: Summonses issued more than 90 days after the date of enactment.

SENATE AMENDMENT

The Senate amendment expands the limitations in the House bill in the following manner:

(1) The prohibitions apply to all computer source code unless developed for the internal use of the taxpayer or a related person.

(2) In order to summons source code, the Secretary is required to determine that the need for the source code outweighs the risks of disclosure of the computer source code in addition to being unable to otherwise reasonably ascertain the correctness of an item on a taxpayer's return and identifying the portion of the Code with reasonable specificity.

(3) If the Secretary makes such a determination he will be considered to have satisfied the statutory requirements to summons source code if he (a) makes a good faith determination that it is not feasible to determine the correctness of the return item in question without access to the computer software program and associated data, (b) makes a formal request for such program and any data from the taxpayer and requests such program from the owner of the source code after reaching such determination, and (c) has not received such program and data within 180 days of making the formal

request.

In addition to authorizing any court enforcing a subpoena to issue any order necessary to prevent the disclosure of confidential information, the Senate amendments establishes a number of specific protections against the disclosure and improper use of trade secrets and confidential information incident to the examination by the Secretary of any computer software program or source code that comes into the possession or control of the Secretary in the course of any examination with respect to any taxpayer. These protections include the following:

(1) Such software or source code may be examined only in connection with the examination of the taxpayer's return with regard to which it was received.

(2) Such software or source code must be maintained in a secure area.

(3) Such source code may not be removed from the owner's place of business without the owner's consent unless such removal is pursuant to a court order.

(4) Such software or source code may not be decompiled or disassembled.

(5) Such software or source code may only be copied as necessary to perform the specific examination. The owner of the software must be informed of any copies that are made, such copies must be numbered, and at the conclusion of the examination and any related court proceedings, all such copies must be accounted for and returned to the owner, permanently deleted, or destroyed. The Secretary must provide the owner of such software or source code with the names of any individuals who will have access to such software or source code.

(6) If an individual who is not an officer or employee of the U.S. Government will examine the software or source code, such individual must enter into a written agreement with the Secretary that such individual will not disclose such software or source code to any person other than authorized employees or agents of the Secretary at any time, and that such individual will not participate in the development of software that is intended for a similar purpose as the summoned software for a period of two years.

(7) Criminal penalties are provided where any person willfully divulges or makes known software that was obtained (whether or not by summons) for the purpose of examining a taxpayer's return in violation of this provision.

EFFECTIVE DATE: Summons issued and software acquired after the date of enactment. In addition, 90 days after the date of enactment, the protections against the disclosure and improper use of trade secrets and confidential

information added by the provision (except for the requirement that the Secretary provide a written agreement from non-U.S. government officers and employees) apply to software and source code acquired on or before the date of enactment.

CONFERENCE AGREEMENT

The conference agreement generally follows the Senate amendment with regard to the safeguards for protection of computer software and source code that is obtained by the IRS in the course of the examination of a taxpayer's return. The conference agreement specifically provides that computer software or source code that is obtained by the IRS in the course of the examination of a taxpayer's return will be treated as return information for the purposes of section 6103. The conference agreement follows the Senate amendment with regard to the standards the Secretary must meet in order to summons certain types of computer source code. The conference agreement follows the House bill in limiting the higher standards for a summons to third-party tax-related computer source code.

Under the conference agreement, no summons may be issued for tax-related computer software source code unless (1) the Secretary is unable otherwise to ascertain the correctness of any item on a return from the taxpayer's books and records or the computer software program and associated data, (2) the Secretary identifies with reasonable specificity the portion of the computer source code needed to verify the correctness of the item and (3) the Secretary determines that the need for the source code outweighs the risk of unauthorized disclosure of trade secrets. The Secretary is considered to have satisfied the first two of these requirements if the Secretary makes a formal request for such materials to both the taxpayer and the owner of the software that is not satisfied within 180 days.

This limitation on the summons of tax-related computer software source code does not apply if the summons is issued in connection with an inquiry into any offense connected with the administration or enforcement of the internal revenue laws. The limitation also does not apply to a summons of computer software source code that was acquired or developed by the taxpayer or a related person primarily for internal use by the taxpayer or such person rather than for commercial distribution. A finding that computer software source code was developed for internal use, and thus not eligible for the limitation in summons authority in this provision, is not intended to be dispositive of whether such software was intended for internal use for any other purpose of this title.

Communications between the owner of the tax-related computer software source code and the taxpayer are not protected from summons by this provision. Communications between the owner of the tax-related source code and persons not related to the taxpayer that are related to the functioning and operation of the software may be treated as a part of the computer software source code.

The provision does not change or eliminate any other requirement of the Code. A summons for third-party tax-related computer source code that meets

the standards established by the provision will not be enforced if it would not be enforced under present law. For example, if the Secretary's purpose in issuing the summons is shown to be improper, the summons would not be enforced, even if the Secretary otherwise met the standards for the summons of computer source code established by the provision. The limitations on the summons of tax-related computer software source code apply only with respect to computer software that is used for accounting tax return preparation, tax compliance or tax planning purposes. No inference is intended with respect to computer software used for all other purposes. In such cases, current law will continue to apply, subject to the protections against the disclosure and improper use of trade secrets and other confidential information added by this provision.

Software or source code that is required to be provided under present law must be provided without regard to this provision. For example, computer software or source code that is required to be provided in connection with the registration of a confidential corporate tax shelter arrangements under section 6111 would continue to be required to be provided without regard to this provision. Thus, the registration requirement of section 6111 cannot be avoided where the tax benefits of the shelter are discernible only from the operation of a computer program.

The conference agreement includes the protections against the disclosure and improper use of trade secrets and confidential information contained in the Senate amendment. The requirement that software or source code obtained by the Secretary in the course of an examination be used only in connection with that examination is intended to prevent the Secretary from using the software for the purpose of examining other, unrelated taxpayers. The requirement is not intended to prevent the Secretary from using knowledge it obtains in the course of the examination, so long as such use does not result in the disclosure of tax return information (including the software or source code) or the violation of any statutory protection or judicial order.

EFFECTIVE DATE.--The conference agreement follows the Senate effective date.


d. Threat of audit prohibited to coerce tip reporting alternative commitment agreements (sec. 349 of the House bill and sec. 3414 of the Senate amendment)

PRESENT LAW

Restaurants may enter into Tip Reporting Alternative Commitment (TRAC) agreements. A restaurant entering into a TRAC agreement is obligated to educate its employees on their tip reporting obligations, to institute formal tip reporting procedures, to fulfill all filing and record keeping requirements, and to pay and deposit taxes. In return, the IRS agrees to base the restaurant's liability for employment taxes solely on reported tips and any unreported tips discovered during an IRS audit of an employee.

HOUSE BILL

The provision requires the IRS to instruct its employees that they may not threaten to audit any taxpayer in an attempt to coerce the taxpayer to enter into a TRAC agreement.

EFFECTIVE DATE.--Date of enactment.

### SENATE AMENDMENT

Same as the House bill.

### CONFERENCE AGREEMENT

The conference agreement follows the House bill and the Senate amendment.

e. Taxpayers allowed motion to quash all third-party summonses (sec. 3415 of the Senate amendment)

### PRESENT LAW

When the IRS issues a summons to a 'third-party recordkeeper' relating to the business transactions or affairs of a taxpayer, notice of the summons must be given to the taxpayer within three days by certified or registered mail. The taxpayer is thereafter given up to 23 days to begin a court proceeding to quash the summons. If the taxpayer does so, third-party recordkeepers are prohibited from complying with the summons until the court rules on the taxpayer's petition or motion to quash, but the statute of limitations for assessment and collection with respect to the taxpayer is stayed during the pendency of such a proceeding. Third-party recordkeepers are generally persons who hold financial information about the taxpayer, such as banks, brokers, attorneys, and accountants.

### HOUSE BILL

No provision.

### SENATE AMENDMENT

The Senate amendment generally expands the current 'third-party recordkeeper' procedures to apply to summonses issued to persons other than the taxpayer. Thus, the taxpayer whose liability is being investigated receives notice of the summons and is entitled to bring an action in the appropriate U.S. District Court to quash the summons. As under the current third-party recordkeeper provision, the statute of limitations on assessment and collection is stayed during the litigation, and certain kinds of summonses specified under present law are not subject to these requirements.

EFFECTIVE DATE.--Summonses served after the date of enactment.

### CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment with a clarification that nothing in section 7609 of the Code (relating to special procedures for third-party summonses) shall be construed to limit the ability of the IRS to obtain information (other than by summons) through formal or informal procedures authorized by the Code.

        f. Service of summonses to third-party recordkeepers permitted by mail (sec. 3416 of the Senate amendment)

### PRESENT LAW

A summons must be served 'by an attested copy delivered in hand to the person to whom it is directed or left at his last and usual place of abode.' If a third-party recordkeeper summons is served, the IRS may give the taxpayer notice of the summons via certified or registered mail. The Federal Rules of Civil Procedure permits service of process by mail even in summons enforcement proceedings.

### HOUSE BILL

No provision.

### SENATE AMENDMENT

The Senate amendment allows the IRS the option of serving any summons either in person or by certified or registered mail.

EFFECTIVE DATE.--Summonses served after the date of enactment.

### CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

        g. Notice of IRS contact of third parties (sec. 3417 of the Senate amendment)

### PRESENT LAW

Third parties may be contacted by the IRS in connection with the examination of a taxpayer or the collection of the tax liability of the taxpayer. The IRS has the right to summon third-party recordkeepers. In general, the taxpayer must be notified of the service of summons on a third party within three days of the date of service. The IRS also has the right to seize property of the taxpayer that is held in the hands of third parties. Except in jeopardy situations, the Internal Revenue Manual provides that IRS will personally contact the taxpayer and inform the taxpayer that seizure of the asset is planned.

### HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires the IRS to notify the taxpayer before contacting third parties regarding examination or collection activities (including summonses) with respect to the taxpayer. Contacts with government officials relating to matters such as the location of assets or the taxpayer's current address are not restricted by this provision. The provision does not apply to criminal tax matters, if the collection of the tax liability is in jeopardy, or if the taxpayer authorized the contact.

EFFECTIVE DATE.--Contacts made after 180 days after the date of enactment.

CONFERENCE AGREEMENT

The conference agreement provides that the IRS may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of the taxpayer without providing reasonable notice in advance to the taxpayer that the IRS may contact persons other than the taxpayer. It is intended that in general this notice will be provided as part of an existing IRS notice provided to taxpayers. The conference agreement also requires the IRS to provide periodically to the taxpayer a record of persons previously contacted during that period by the IRS with respect to the determination or collection of that taxpayer's tax liability. This record shall also be provided upon request of the taxpayer. The provision does not apply to criminal tax matters, if the collection of the tax liability is in jeopardy, if the Secretary determines for good cause shown that disclosure may involve reprisal against any person, or if the taxpayer authorized the contact.

EFFECTIVE DATE.--Contacts made after 180 days after the date of enactment.

   3. Collection activities

        a. Approval process for liens, levies, and seizures (sec. 3421 of the Senate amendment)

PRESENT LAW

Supervisory approval of liens, levies or seizures is only required under certain circumstances. For example, a levy on a taxpayer's principal residence is only permitted upon the written approval of the District Director or Assistant District Director.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires the IRS to implement an approval process under which any lien, levy or seizure would, where appropriate, be approved

by a supervisor, who would review the taxpayer's information, verify that a balance is due, and affirm that a lien, levy or seizure is appropriate under the circumstances. Circumstances to be considered include the amount due and the value of the asset.

EFFECTIVE DATE: Collection actions commenced after date of enactment, except for automated collection system actions initiated before January 1, 2000.

## CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment. The conferees intend that the Commissioner have discretion in promulgating the procedures required by this provision to determine the circumstances under which supervisory review of liens or levies issued by the automated collection system is or is not appropriate.

EFFECTIVE DATE: Collection actions commenced after date of enactment, except in the case of any action under the automated collection system, the provision applies to actions initiated after December 31, 2000.

b. Modifications to certain levy exemption amounts (sec. 3431 of the Senate amendment)

IRS may levy on all non-exempt property of the taxpayer. Property exempt from levy includes up to $2,500 in value of fuel, provisions, furniture, and personal effects in the taxpayer's household and up to $1,250 in value of books and tools necessary for the trade, business or profession of the taxpayer.

## HOUSE BILL

No provision.

## SENATE AMENDMENT

The Senate amendment increases the value of personal effects exempt from levy to $10,000 and the value of books and tools exempt from levy to $5,000. These amounts are indexed for inflation.

EFFECTIVE DATE: Levies issued after date of enactment.

## CONFERENCE AGREEMENT

The conference agreement increases the value of personal effects exempt from levy to $6,250 and the value of books and tools exempt from levy to $3,125. These amounts are indexed for inflation.

EFFECTIVE DATE: Levies issued after date of enactment.

c. Release of levy upon agreement that amount is uncollectible (sec. 3432 of the Senate amendment)

PRESENT LAW

Some taxpayers have contended that the IRS does not release a wage levy immediately upon receipt of proof that the tax is not collectible. Instead, they claim, the IRS levies on one period's wage payment before releasing the levy.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires the IRS to immediately release a wage levy upon agreement with the taxpayer that the tax is not collectible.

EFFECTIVE DATE: Levies imposed after December 31, 1999.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment, with a clarification that the release is to occur as soon as practicable. The IRS is not to intentionally delay until after one wage payment has been made and levied upon before releasing the levy.

d. Levy prohibited during pendency of refund proceedings (sec. 3433 of the Senate amendment)

PRESENT LAW

The IRS is prohibited from making a tax assessment (and thus prohibited from collecting payment) with respect to a tax liability while it is being contested in Tax Court. However, the IRS is permitted to assess and collect tax liabilities during the pendency of a refund suit relating to such tax liabilities, under the circumstances described below.

Generally, full payment of the tax at issue is a prerequisite to a refund suit. However, if the tax is divisible (such as employment taxes or the trust fund penalty under Code section 6672), the taxpayer need only pay the tax for the applicable period before filing a refund claim.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires the IRS to withhold collection of liabilities that are the subject of a refund suit during the pendency of the litigation. This will only apply when refund suits can be brought without the full payment of the tax, i.e., in the case of divisible taxes.

Collection by levy would be withheld unless jeopardy exists or the taxpayer waives the suspension of collection in writing (because collection will stop the running of interest and penalties on the tax liability). The Secretary could not commence a civil action to collect a liability except in a proceeding related to the initial refund proceeding. The statute of limitations on collection is stayed for the period during which the IRS is prohibited from collecting by levy or otherwise.

EFFECTIVE DATE: Unpaid tax attributable to taxable periods beginning after December 31, 1998.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment, with a technical modification. The conferees wish to clarify that proceedings related to a proceeding <20> under this provision include, but are not limited to, civil actions or third-party complaints initiated by the United States or another person with respect to the same kinds of tax (or related taxes or penalties) for the same (or overlapping) tax periods. For example, if a taxpayer brings a suit for a refund of a portion of a penalty that the taxpayer has paid under section 6672, the United States could, consistent with this provision, counterclaim against the taxpayer for the balance of the penalty or initiate related claims against other persons assessed penalties under section 6672 for the same employment taxes.

_____

20/ For purposes of new section 6331(i)(4)(A)(ii) of the Code.
_____

e. Approval required for jeopardy and termination assessments and jeopardy levies (sec. 3434 of the Senate amendment)

PRESENT LAW

In general, a 30-day waiting period is imposed after assessment of all types of taxes. In certain circumstances, the waiting period puts the collection of taxes at risk. The Code provides special procedures that allow the IRS to make jeopardy assessments or termination assessments in certain extraordinary circumstances, such as if the taxpayer is leaving or removing property from the United States, or if assessment or collection would be jeopardized by delay. In jeopardy or termination situations, a levy may be made without the 30-days' notice of intent to levy that is ordinarily required.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires IRS Counsel review and approval before the IRS can make a jeopardy assessment, a termination assessment, or a jeopardy levy. If Counsel's approval is not obtained, the taxpayer is entitled to obtain abatement of the assessment or release of the levy, and, if the IRS fails to offer such relief, to appeal first to IRS Appeals under the new due process procedure for IRS collections and then to court.

EFFECTIVE DATE: Taxes assessed and levies made after the date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

f. Increase in amount of certain property on which lien not valid (sec. 3435 of the Senate amendment)

PRESENT LAW

A Federal tax lien attaches to all property and rights in property of the taxpayer, if the taxpayer fails to pay the assessed tax liability after notice and demand. However, the Federal tax lien is not valid as to certain 'superpriority' interests.

Two of these interests are limited by a specific dollar amount. Purchasers of personal property at a casual sale are presently protected against a Federal tax lien attached to such property to the extent the sale is for less than $250. In addition, present law provides protection to mechanic's lienors with respect to the repairs or improvements made to owner-occupied personal residences, but only to the extent that the contract for repair or improvement is for not more than $1,000.

In addition, a superpriority is granted to banks and building and loan associations which make passbook loans to their customers, provided that those institutions retain the passbooks in their possession until the loan is completely paid off.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment increases the dollar limit for purchasers at a casual sale from $250 to $1,000, and further increases the dollar limit from $1,000 to $5,000 for mechanics lienors providing home improvement work for owner-occupied personal residences. The Senate amendment indexes these amounts for inflation. The Senate amendment also clarifies the superpriority rules to reflect present banking practices, where a passbook-type loan may be made even though an actual passbook is not used.

EFFECTIVE DATE: Date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

g. Waiver of early withdrawal tax for IRS levies on employer-sponsored retirement plans or IRAs (sec. 3436 of the Senate amendment)

PRESENT LAW

Under present law, a distribution of benefits from a employer-sponsored retirement plan or an Individual Retirement Arrangement ('IRA') generally is includible in gross income in the year it is paid or distributed, except to the extent the amount distributed represents the employee's after-tax contributions or investment in the contract (i.e., basis). Special rules apply to lump-sum distributions from qualified retirement plans, distributions rolled over to an IRA or employer-sponsored retirement plan, and distributions of employer securities.

Early distributions from qualified plans and IRAs includible in income generally are subject to a 10-percent early withdrawal tax, unless an exception to the tax applies. Includible amounts withdrawn prior to attainment of age 59 1/2 are subject to the additional 10-percent early withdrawal tax, unless the withdrawal is due to death or disability, is made in the form of certain periodic payments, is used to pay medical expenses in excess of 7.5 percent of adjusted gross income ('AGI'), or is used to purchase health insurance of an unemployed individual. Certain additional exceptions to the tax apply separately to withdrawals from IRAs and qualified plans. Distributions from IRAs for education expenses and for up to $10,000 of first-time homebuyer expenses, or to unemployed individuals to purchase health insurance are not subject to the 10-percent early withdrawal tax. A distribution from a qualified plan made by an employee after separation from service after attainment of age 55 is not subject to the 10-percent early withdrawal tax.

Under present law, the IRS is authorized to levy on all non-exempt property of the taxpayer. Benefits under employer-sponsored retirement plans (including 403(b) and 457 plans) and IRAs are not exempt from levy by the IRS.

Distributions from employer-sponsored retirement plans or IRAs made on account of an IRS levy would be includible in the gross income of the individual, except to the extent the amount distributed represents after-tax contributions. In addition, the amount includible in income would be subject to the 10-percent early withdrawal tax, unless an exception described above applies.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment provides an exception from the 10-percent early withdrawal tax for amounts withdrawn from an employer-sponsored retirement plan or an IRA that are subject to a levy by the IRS. The exception applies only if the plan or IRA is levied; it does not apply, for example, if the taxpayer withdraws funds to pay taxes in the absence of a levy, in order to release a levy on other interests.

EFFECTIVE DATE.--The provision is effective for withdrawals after the date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment, with a modification to the effective date. The provision is effective for distributions after December 31, 1999.

h. Prohibition of sales of seized property at less than minimum bid (sec. 3441 of the Senate amendment)

PRESENT LAW

A minimum bid price must be established for seized property offered for sale. To conserve the taxpayer's equity, the minimum bid price should normally be computed at 80 percent or more of the forced sale value of the property less encumbrances having priority over the Federal tax lien. If the group manager concurs, the minimum sales price may be set at less than 80 percent. The taxpayer is to receive notice of the minimum bid price within 10 days of the sale. The taxpayer has the opportunity to challenge the minimum bid price, which cannot be more than the tax liability plus the expenses of sale. Present law does not contemplate a sale of the seized property at less than the minimum bid price. Rather, if no person offers the minimum bid price, the IRS may buy the property at the minimum bid price or the property may be released to the owner.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment prohibits the IRS from selling seized property for less than the minimum bid price. The Senate amendment provides that the sale of property for less than the minimum bid price would constitute an unauthorized collection action, which would permit an affected person to sue for civil damages.

EFFECTIVE DATE.--Sales occurring after the date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

i. Accounting of sales of seized property (sec. 3442 of the Senate amendment)

PRESENT LAW

The IRS is authorized to seize and sell a taxpayer's property to satisfy an unpaid tax liability. The IRS is required to give written notice to the taxpayer before seizure of the property. The IRS must also give written notice to the taxpayer at least 10 days before the sale of the seized property.

The IRS is required to keep records of all sales of real property. The records must set forth all proceeds and expenses of the sale. The IRS is required to apply the proceeds first against the expenses of the sale, then against a specific tax liability on the seized property, if any, and finally against any unpaid tax liability of the taxpayer. Any surplus proceeds are credited to the taxpayer or persons legally entitled to the proceeds.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires the IRS to provide a written accounting of all sales of seized property, whether real or personal, to the taxpayer. The accounting must include a receipt for the amount credited to the taxpayer's account.

EFFECTIVE DATE.--Seizures occurring after the date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

j. Uniform asset disposal mechanism (sec. 3443 of the Senate amendment)

PRESENT LAW

The IRS must sell property seized by levy either by public auction or by public sale under sealed bids. These are often conducted by the revenue officer charged with collecting the tax liability.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires the IRS to implement a uniform asset disposal mechanism for sales of seized property. The disposal mechanism should be designed to remove any participation in the sale of seized assets by revenue officers. The provision authorizes the consideration of outsourcing of the disposal mechanism.

EFFECTIVE DATE.--Requires a uniform asset disposal system to be implemented within two years from the date of enactment.

CONFERENCE AGREEMTENT

The conference agreement follows the Senate amendment.

k. Codification of IRS administrative procedures for seizure of taxpayer's property (sec. 3444 of the Senate amendment)

PRESENT LAW

The Internal Revenue Manual (IRM) provides general guidelines for seizure actions.

Prior to the levy action, the revenue officer must determine that there is sufficient equity in the property to be seized to yield net proceeds from the sale to apply to unpaid tax liabilities. If it is determined after seizure that the taxpayer's equity is insufficient to yield net proceeds from sale to apply to the unpaid tax, the revenue officer will immediately release the seized property.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment codifies the IRS administrative procedures which require the IRS to investigate the status of property prior to levy.

EFFECTIVE DATE.--Date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment, with a technical modification applying the investigation requirement only to property to be sold pursuant to section 6335.

l. Procedures for seizure of residences and businesses (sec. 3445 of the Senate amendment)

PRESENT LAW

Subject to certain procedural rules and limitations, the Secretary may

seize the property of the taxpayer who neglects or refuses to pay any tax within 10 days after notice and demand. The IRS may not levy on the personal residence of the taxpayer unless the District Director (or the assistant District Director) personally approves in writing or in cases of jeopardy. There are no special rules for property that is used as a residence by parties other than the taxpayer. IRS Policy Statement P-5-34 states that the facts of a case and alternative collection methods must be thoroughly considered before deciding to seize the assets of a going business.

### HOUSE BILL

No provision.

### SENATE AMENDMENT

The Senate amendment prohibits the IRS from seizing real property that is used as a residence (by the taxpayer or another person) to satisfy an unpaid liability of $5,000 or less, including penalties and interest.

The Senate amendment requires the IRS to exhaust all other payment options before seizing the taxpayer's business assets or principal residence. For this purpose, future income that may be derived by a taxpayer from the commercial sale of fish or wildlife under a specified State permit must be considered in evaluating other payment options before seizing the taxpayer's business assets. The provision does not apply in cases of jeopardy.

EFFECTIVE DATE.--Date of enactment.

### CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment, except as follows. The prohibition on seizing a residence to satisfy an unpaid liability of $5,000 or less is clarified to apply to any real property used as a residence by the taxpayer or any nonrental real property of the taxpayer used by any other individual as a residence. The definition of business assets is clarified to apply to tangible personal property or real property used in the trade or business of an individual taxpayer (other than real property that is rented). The conference agreement provides that a levy is permitted on a principal residence only if a judge or magistrate of a United States district court approves (in writing) of the levy.

### 4. Provisions relating to examination and collection activities

#### a. Procedures relating to extensions of statute of limitations by agreement (sec. 345 of the House bill and sec. 3461 of the Senate amendment)

### PRESENT LAW

The statute of limitations within which the IRS may assess additional taxes is generally three years from the date a return is filed. Prior to the

expiration of the statute of limitations, both the taxpayer and the IRS may agree in writing to extend the statute. An extension may be for either a specified period or an indefinite period. The statute of limitations within which a tax may be collected after assessment is 10 years after assessment. Prior to the expiration of the statute of limitations on collection, both the taxpayer and the IRS may agree in writing to extend the statute.

### HOUSE BILL

The House bill requires that, on each occasion on which the taxpayer is requested by the IRS to extend the statute of limitations, the IRS must notify the taxpayer of the taxpayer's right to refuse to extend the statute of limitations or to limit the extension to particular issues.

EFFECTIVE DATE: Requests to extend the statute of limitations made after the date of enactment.

### SENATE AMENDMENT

The Senate amendment eliminates the provision of present law that allows the statute of limitations on collections to be extended by agreement between the taxpayer and the IRS.

The Senate amendment also requires that, on each occasion on which the taxpayer is requested by the IRS to extend the statute of limitations on assessment, the IRS must notify the taxpayer of the taxpayer's right to refuse to extend the statute of limitations or to limit the extension to particular issues.

EFFECTIVE DATE: Requests to extend the statute of limitations made after December 31, 1999 and to all extensions of the statute of limitations on collection that are open on December 31, 1999.

### CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment, except that extensions of the statute of limitations on collection may be made in ations, the Secretary may seize the property of the taxpayer who neglects or refuses to pay any tax witche statute of limitations entered in connection with the original written terms of the installment agreement extends beyond the end of the otherwise applicable 10-year period, plus 90 days.

EFFECTIVE DATE. Requests to extend the statute of limitations made after December 31, 1999. If, in any request to extend the period of limitations made on or before December 31, 1999, a taxpayer agreed to extend that period beyond the 10-year statute of limitations on collection, that extension shall expire on the latest of: the last day of such 10-year period, December 31, 2002, or, in the case of an extension in connection with an installment agreement, the 90th day after the end of the period of such extension.

b. Offers-in-compromise (sec. 346 of the House bill and sec.

3462 of the Senate amendment)

PRESENT LAW

The Code permits the IRS to compromise a taxpayer's tax liability. An offer-in-compromise is an offer by the taxpayer to settle unpaid tax accounts for less than the full amount of the assessed balance due. An offer-in-compromise may be submitted for all types of taxes, as well as interest and penalties, arising under the Internal Revenue Code.

There are two bases on which an offer can be made: doubt as to liability for the amount owed and doubt as to ability to pay the amount owed.

A compromise agreement based on doubt as to ability to pay requires the taxpayer to file returns and pay taxes for five years from the date the IRS accepts the offer. Failure to do so permits the IRS to begin immediate collection actions for the original amount of the liability. The Internal Revenue Manual provides guidelines for revenue officers to determine whether an offer-in-compromise is adequate. An offer is adequate if it reasonably reflects collection potential. Although the revenue officer is instructed to consider the taxpayer's assets and future and present income, the IRM advises that rejection of an offer solely based on narrow asset and income evaluations should be avoided.

Pursuant to the IRM, collection normally is withheld during the period an offer-in-compromise is pending, unless it is determined that the offer is a delaying tactic and collection is in jeopardy.

HOUSE BILL

RIGHTS OF TAXPAYERS ENTERING INTO OFFERS-IN-COMPROMISE: The House bill requires the IRS to develop and publish schedules of national and local allowances that will provide taxpayers entering into an offer-in-compromise with adequate means to provide for basic living expenses.

SUSPEND COLLECTION BY LEVY WHILE OFFER-IN-COMPROMISE IS PENDING: No provision.

PROCEDURES FOR REVIEWS OF REJECTIONS OF OFFERS-IN-COMPROMISE AND INSTALLMENT AGREEMENTS: No provision.

PUBLICATION OF TAXPAYER'S RIGHTS WITH RESPECT TO OFFERS-IN-COMPROMISE: The House bill requires the IRS to publish guidance on the rights and obligations of taxpayers and the IRS relating to offers in compromise, including a compliant spouse's right to apply to reinstate an agreement that would otherwise be revoked due to the nonfiling or nonpayment of the other spouse, providing all payments required under the compromise agreement are current.

LIBERAL ACCEPTANCE POLICY: No provision.

EFFECTIVE DATE: Date of enactment.

SENATE AMENDMENT

RIGHTS OF TAXPAYERS ENTERING INTO OFFERS-IN-COMPROMISE: Same as the House bill, except as follows. Under the Senate amendment, the IRS also is required to consider the facts and circumstances of a particular taxpayer's case in determining whether the national and local schedules are adequate for that particular taxpayer. If the facts indicate that use of scheduled allowances would be inadequate under the circumstances, the taxpayer is not limited by the national or local allowances.

The Senate amendment prohibits the IRS from rejecting an offer-in-compromise from a low-income taxpayer solely on the basis of the amount of the offer. The Senate amendment provides that, in the case of an offer-in-compromise submitted solely on the basis of doubt as to liability, the IRS may not reject the offer merely because the IRS cannot locate the taxpayer's file. The Senate amendment prohibits the IRS from requesting a financial statement if the taxpayer makes an offer-in-compromise based solely on doubt as to liability.

SUSPEND COLLECTION BY LEVY WHILE OFFER-IN-COMPROMISE IS PENDING: The Senate amendment prohibits the IRS from collecting a tax liability by levy (1) during any period that a taxpayer's offer-in-compromise for that liability is being processed, (2) during the 30 days following rejection of an offer, and (3) during any period in which an appeal of the rejection of an offer is being considered. Taxpayers whose offers are rejected and who made good faith revisions of their offers and resubmitted them within 30 days of the rejection or return would be eligible for a continuous period of relief from collection by levy. This prohibition on collection by levy would not apply if the IRS determines that collection is in jeopardy or that the offer was submitted solely to delay collection. The Senate amendment provides that the statute of limitations on collection would be tolled for the period during which collection by levy is barred.

PROCEDURES FOR REVIEWS OF REJECTIONS OF OFFERS-IN-COMPROMISE AND INSTALLMENT AGREEMENTS: The Senate amendment requires that the IRS implement procedures to review all proposed IRS rejections of taxpayer offers-in-compromise and requests for installment agreements prior to the rejection being communicated to the taxpayer. The Senate amendment requires the IRS to allow the taxpayer to appeal any rejection of such offer or agreement to the IRS Office of Appeals. The IRS must notify taxpayers of their right to have an appeals officer review a rejected offer-in-compromise on the application form for an offer-in-compromise.

PUBLICATION OF TAXPAYER'S RIGHTS WITH RESPECT TO OFFERS-IN-COMPROMISE: Same as the House bill.

LIBERAL ACCEPTANCE POLICY: The Senate amendment provides that the IRS will adopt a liberal acceptance policy for offers-in-compromise to provide an incentive for taxpayers to continue to file tax returns and continue to pay their taxes.

EFFECTIVE DATE: Generally effective for offers-in-compromise submitted after the date of enactment. The provision suspending levy is effective with respect to offers-in-compromise pending on or made after December 31, 1999.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment, with the following additions. First, the provision suspending collection by levy while an offer-in-compromise is pending is also expanded to apply while an installment agreement is pending.

Second, the provision authorizes the Secretary to prescribe guidelines for the IRS to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute. Accordingly, the conferees expect that the present regulations will be expanded so as to permit the IRS, in certain circumstances, to consider additional factors (i.e., factors other than doubt as to liability or collectibility) in determining whether to compromise the income tax liabilities of individual taxpayers. For example, the conferees anticipate that the IRS will take into account factors such as equity, hardship, and public policy where a compromise of an individual taxpayer's income tax liability would promote effective tax administration. The conferees anticipate that, among other situations, the IRS may utilize this new authority to resolve longstanding cases by forgoing penalties and interest which have accumulated as a result of delay in determining the taxpayer's liability. The conferees believe that the ability to compromise tax liability and to make payments of tax liability by installment enhances taxpayer compliance. In addition, the conferees believe that the IRS should be flexible in finding ways to work with taxpayers who are sincerely trying to meet their obligations and remain in the tax system. Accordingly, the conferees believe that the IRS should make it easier for taxpayers to enter into offer-in-compromise agreements, and should do more to educate the taxpaying public about the availability of such agreements.

c. Notice of deficiency to specify deadlines for filing Tax Court petition (sec. 347 of the House bill and sec. 3463 of the Senate amendment)

PRESENT LAW

Taxpayers must file a petition with the Tax Court within 90 days after the deficiency notice is mailed (150 days if the person is outside the United States) (sec. 6213). If the petition is not filed within that time period, the Tax Court does not have jurisdiction to consider the petition.

HOUSE BILL

The provision requires the IRS to include on each deficiency notice the date determined by the IRS as the last day on which the taxpayer may file a petition with the Tax Court. The provision provides that a petition filed with the Tax Court by this date is treated as timely filed.

EFFECTIVE DATE: Notices mailed after December 31, 1998.

SENATE AMENDMENT

Same as the House bill.

CONFERENCE AGREEMENT

The conference agreement follows the House bill and the Senate amendment.

d. Refund or credit of overpayments before final determination (sec. 348 of the House bill and sec. 3464 of the Senate amendment)

PRESENT LAW

Generally, the IRS may not take action to collect a deficiency during the period a taxpayer may petition the Tax Court, or if the taxpayer petitions the Tax Court, until the decision of the Tax Court becomes final. Actions to collect a deficiency attempted during this period may be enjoined, but there is no authority for ordering the refund of any amount collected by the IRS during the prohibited period.

If a taxpayer contests a deficiency in the Tax Court, no credit or refund of income tax for the contested taxable year generally may be made, except in accordance with a decision of the Tax Court that has become final. Where the Tax Court determines that an overpayment has been made and a refund is due the taxpayer, and a party appeals a portion of the decision of the Tax Court, no provision exists for the refund of any portion of any overpayment that is not contested in the appeal.

The provision provides that a proper court (including the Tax Court) may order a refund of any amount that was collected within the period during which the Secretary is prohibited from collecting the deficiency by levy or other proceeding.

The provision also allows the refund of that portion of any overpayment determined by the Tax Court to the extent the overpayment is not contested on appeal.

EFFECTIVE DATE: Date of enactment.

SENATE AMENDMENT

Same as the House bill.

CONFERENCE AGREEMENT

The conference agreement follows the House bill and the Senate amendment.

e. IRS procedures relating to appeal of examinations and collections (sec. 3465 of the Senate amendment)

PRESENT LAW

IRS Appeals operates through regional Appeals offices which are independent of the local District Director and Regional Commissioner's offices. In general, IRS Appeals offices have jurisdiction over both pre-assessment and post-assessment cases. The taxpayer generally has an opportunity to seek Appeals jurisdiction after failing to reach agreement with the Examination function and before filing a petition in Tax Court, after filing a petition in Tax Court (but before litigation), after assessment of certain penalties, after a claim for refund has been rejected by the District Director's office, and after a proposed rejection of an offer-in-compromise in a collection case.

In certain cases under Coordinated Examination Program procedures, the taxpayer has an opportunity to seek early Appeals jurisdiction over some issues while an examination is still pending on other issues. The early referral procedures also apply to employment tax issues on a limited basis.

A mediation or alternative dispute resolution (ADR) process is also available in certain cases. ADR is used at the end of the administrative process as a final attempt to resolve a dispute before litigation. ADR is currently only available for cases with more than $10 million in dispute. ADR processes are also available in bankruptcy cases and cases involving a competent authority determination.

In April 1996, the IRS implemented a Collections Appeals Program within the Appeals function, which allows taxpayers to appeal lien, levy, or seizure actions proposed by the IRS. In January 1997, appeals for installment agreements proposed for termination were added to the program.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment codifies existing IRS procedures with respect to early referrals to Appeals and the Collections Appeals Process. The Senate amendment also codifies the existing ADR procedures, as modified by eliminating the dollar threshold.

In addition, the IRS is required to establish a pilot program of binding arbitration for disputes of all sizes. Under the pilot program, binding arbitration must be agreed to by both the taxpayer and the IRS.

The Senate amendment requires the IRS to make Appeals officers available on a regular basis in each State, and consider videoconferencing of Appeals conferences for taxpayers seeking appeals in rural or remote areas.

EFFECTIVE DATE: Date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

f. Application of certain fair debt collection practices (sec. 3466 of the Senate amendment)

PRESENT LAW

The Fair Debt Collection Practices Act provides a number of rules relating to debt collection practices. Among these are restrictions on communication with the consumer, such as a general prohibition on telephone calls outside the hours of 8:00 a.m. to 9:00 p.m. local time, and prohibitions on harassing or abusing the consumer. In general, these provisions do not apply to the Federal Government.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment applies the restrictions relating to communication with the taxpayer/debtor and the prohibitions on harassing or abusing the debtor to the IRS. The restrictions relating to communication with the taxpayer/debtor are not intended to hinder the ability of the IRS to respond to taxpayer inquiries (such as answering telephone calls from taxpayers).

EFFECTIVE DATE: Date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

g. Guaranteed availability of installment agreements (sec. 3467 of the Senate amendment)

PRESENT LAW

The Code authorizes the IRS to enter into written agreements with any taxpayer under which the taxpayer is allowed to pay taxes owed, as well as interest and penalties, in installment payments if the IRS determines that doing so will facilitate collection of the amounts owed. An installment agreement does not reduce the amount of taxes, interest, or penalties owed, but does provide for a longer period during which payments may be made during which other IRS enforcement actions (such as levies or seizures) are held in abeyance. The IRS in most instances readily approves these requests if the amounts involved are not large (in general, below $10,000) and if the taxpayer has filed tax returns on time in the past. Some taxpayers are

required to submit background information to the IRS substantiating their application.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment requires the Secretary to enter an installment agreement, at the taxpayer's option, if: (1) the liability is $10,000, or less (excluding penalties and interest); (2) within the previous 5 years, the taxpayer has not failed to file or to pay, nor entered an installment agreement under this provision; (3) if requested by the Secretary, the taxpayer submits financial statements, and the Secretary determines that the taxpayer is unable to pay the tax due in full; (4) the installment agreement provides for full payment of the liability within 3 years; and (5) the taxpayer agrees to continue to comply with the tax laws and the terms of the agreement for the period (up to 3 years) that the agreement is in place.

EFFECTIVE DATE: Date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment.

h. Prohibition on requests to taxpayers to waive rights to bring actions (sec. 3468 of the Senate amendment)

PRESENT LAW

There is no restriction on the circumstances under which the Government may request a taxpayer to waive the taxpayer's right to sue the United States or one of its employees for any action taken in connection with the tax laws.

HOUSE BILL

No provision.

SENATE AMENDMENT

The Senate amendment provides that the Government may not request a taxpayer to waive the taxpayer's right to sue the United States or one of its employees for any action taken in connection with the tax laws, unless (1) the taxpayer knowingly and voluntarily waives that right, or (2) the request is made to the taxpayer's attorney or other representative.

EFFECTIVE DATE: Date of enactment.

CONFERENCE AGREEMENT

The conference agreement follows the Senate amendment. The conferees

do not intend this provision to apply to the waiver of claims for attorneys'
fees or costs or to the waiver of one or more claims brought in the same
administrative or judicial proceeding with other claims that are being
settled.