UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SUZANNE CARLSON, | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 05-10227-WGY |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Appellee | ) | |

MEMORANDUM AND ORDER

YOUNG, C.J.                                              October 6, 2005

## I.   INTRODUCTION

This case arises out of Suzanne Carlson's appeal under 26
U.S.C. §§ 6320(c) and 6330(d)(1), which allow taxpayers to appeal
to a United States District Court determinations by the Internal
Revenue Service as to the appropriateness of actions to collect
unpaid taxes.

### A.   Procedural Posture

On February 4, 2005, Suzanne Carlson filed a complaint
seeking judicial review under 26 U.S.C. §§ 6320(c) and 6330(d)(1)
of the Internal Revenue Service Appeals Officer's determination
to sustain the United States Notice of Federal Tax Lien and its
Notice of Intent to levy upon Carlson's assets to satisfy her
past-due federal tax liabilities.  Carlson challenges the
determination of the Internal Revenue Service Appeals Officer.

In her complaint, Carlson alleges that the "hearing was not properly held due to the bias of the [Appeals] Officer." Compl. [Doc. No. 1] ¶ 16. Further, she alleges that this failure violated her Fifth Amendment rights. Id. ¶ 18.

On April 22, 2005, the United States filed this Motion to Affirm the Appeals Officer's Determination, to Dismiss the Appeal, or for Summary Judgment [Doc. No. 3].

### B.    Facts

On June 23, 2004, the Internal Revenue Service ("IRS") sent Carlson, by certified mail, a "Final Notice - Notice of Intent to Levy and Your Right to a Hearing" ("Final Notice"). R. at 64, 68.[1] The Final Notice informed Carlson that the IRS intended to levy upon all her property and rights to property to satisfy past-due liabilities, and informed her of her right to appeal the intent to levy to the IRS Appeals Office. Id. at 64. On June 25, the IRS sent Carlson a "Notice of Federal Tax Lien and Your Right to a Hearing under IRC 6320," which informed Carlson that a lien had been filed, and again noted her right to appeal the collection action and to discuss payment options. Id. at 72.

The IRS received Carlson's Form 12153 Request for a Collection Due Process Hearing ("due process hearing") on July 23, 2004, within the 30 days as required by law. Id. at 57. In

---

[1] All of the undisputed documents referred to in this memorandum were attached to the government's motion as exhibits. They are paginated, and will be referred to as the Record ("R.").

an attachment to the form, Carlson also noted that "[i]t is in
the best interest of the government and the taxpayer that an
Offer in Compromise be entered into."  <u>Id.</u> at 58.

On August 18, 2004, the IRS Appeals Office sent Carlson a
letter describing the appeals process.  <u>Id.</u> at 29-32.  In
addition, the two page letter noted that

> [t]he law requires that an individual be current with
> filing their federal income tax returns before a
> collection alternative can be considered.  I have
> reviewed your account and found that the IRS has no
> record of receiving your federal income tax returns for
> tax periods ending 12/2000, 12/2001, 12/2002, and
> 12/2003 . . . . If you have not filed [the above
> returns] please file with the IRS Service Center no
> later than <u>Sep. 17, 2004</u> and provide this office with a
> copy of the returns.

<u>Id.</u> at 29 (emphasis added).

On September 8, 2004, the Appeals Officer sent a letter to
Carlson's attorney, Timothy Burke ("Burke"), scheduling the due
process hearing for October 11, 2004, to be held by
teleconference, and informing him of the procedure to be followed
as prescribed by law.  <u>Id.</u> at 22-24.  In addition, the
correspondence informed Burke that for there to be consideration
of a collection alternative, Carlson would need to provide

- A completed Collection Information Statement with
  all required attachments (Form 433-A for
  individuals and/or Form 433-B for businesses.)

- Signed tax return(s) for the following tax periods
  . . . :
    Type of tax: <u>Form 1040</u>
    Period or Periods: <u>12/2000 12/2001 12/2002</u>
    <u>12/2003</u>

3

        -    Proof of estimated tax payments for the period(s)
             listed below:
                  12/2004

Id. at 23 (emphasis omitted in part).  The letter requested that

the listed items be sent "within 14 days of this letter" and

advised that the Appeals Officer could not "consider collection

alternatives in your hearing without the information requested."

Id.

    On September 10, 2004, Burke acknowledged receipt of the

September 8 letter and requested that the hearing be rescheduled

and be in person rather than via telephone conference call.  Id.

at 21.

    The hearing was rescheduled as a face-to-face hearing for

October 14, 2004 through a letter from the Appeals Officer to

Burke dated September 15, 2004.  Id. at 20.

    On October 14, 2004, the hearing was held at the Boston

Appeals Office with Appeals Officer Lisa Boudreau ("Boudreau").

See id. at 18-19.  In this face-to-face conference, the parties

discussed the possibility of an offer in compromise.  Id. at 18.

In order to qualify for an offer in compromise, a taxpayer must

be current with the filing of their individual tax returns.

Despite the September 17, 2004 deadline set in the August 18,

2004 letter, and the additional request that the returns be filed

within 14 days of the September 8, 2004 letter, Carlson did not

file the returns prior to or at the hearing.  See id.  Although

                                    4

Carlson had not yet filed her late returns, she was given until November 30, 2004 to file: her 2000, 2001, 2002, and 2003 returns; "[c]ompleted collection information statements with all required attachments"; a breakdown of her 2004 income through November 30, 2004; and a completed offer in compromise form.  Id. at 18; Appellant's Mem. in Opp'n to Appellee's Mot. ("Appellant's Mem.") [Doc. No. 7, Attach. 1] at 2.  In the letter summarizing the conference, Boudreau also stated that "[m]y determination in this case will be made with the information available on November 30, 2004."  R. at 19.

In a letter dated November 23, 2004, Carlson, through her attorney, requested an additional 30 days "to complete the accounting" for her personal and corporate returns.  Id. at 17. The letter noted that

>Ms. Carlson reports that she has made substantial progress in completing her accounting records.  The largest bank accounts have been reconciled as of this date.
>Unfortunately, she has been unable to dedicate sufficient time to complete her accounting records by November 30, 2004 due to the significant health issues of her longstanding friend.  These issues include his losing his sight in one eye, diabetes and surgery on one of his feet.  This series of medical issues has required Ms. Carlson to drive her friend to many medical appointments and to expend considerable time attending to his needs.  Additionally, Ms. Carlson's son has been involved in some mischief which has required the expenditure of her time.
>For these reasons, the taxpayer asks for an extension of thirty days to respond to your request for information.

Id.

On the copy of the letter provided in the government's exhibit, there is a "Received" date stamp indicating that the letter was received on November 29, 2004.  <u>Id.</u>

In a letter dated November 30, 2004, the Appeals Officer denied the request.  <u>Id.</u> at 15.  In the letter, Boudreau stated that:

> At the conference a period of six weeks was given for the requested information to be provided.  This was a reasonable time frame and no additional extension is being granted.  As stated in my previous correspondence, my determination will be made with the information available on November 30, 2004.

<u>Id.</u>

On January 5, 2005, the IRS issued a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" ("Notice of Determination").  <u>Id.</u> at 7-13.  The attached four page "Summary and Recommendation" presented a brief factual background, and discussed and analyzed the matters considered at the appeals hearing.  <u>Id.</u> at 10-13.  In summarizing the matters considered at the hearing, the document: (1) reviewed the applicable law and administrative procedures and noted that the "statutory and administrative requirements . . . were in fact met in this case", <u>id.</u> at 11; (2) listed the relevant issues presented by the taxpayer, <u>id.</u> at 12-13; and (3) discussed the "[b]alancing of the [n]eed for the [e]fficient [c]ollection of the [t]axes with the [c]oncerns [t]hat the [c]ollection [a]ction [b]e [n]o [m]ore [i]ntrusive [t]han [n]ecessary."  <u>Id.</u> at 13.

In reviewing the issues presented by the taxpayer, the
summary noted that Carlson "felt that an offer in compromise was
a more appropriate action due to her circumstances" and that

> [a]n offer in compromise was proposed as a collection
> alternative.  The taxpayer had not filed forms 1040 for
> 2000, 2001, 2002 or 2003 so she did not qualify to
> submit an offer in compromise.  She was given six
> weeks, until November 30, 2004, to prepare and file the
> returns . . . .
>
> Ms. Carlson did not complete any of the required
> actions.  On November 29, 2004 a letter was received
> from Mr. Burke requesting an additional extension of
> time to have the income tax returns completed.  No
> additional time was granted, and a letter was sent to
> Ms. Carlson, with a copy to Mr. Burke, confirming that
> the determination would be made with the information
> available on November 30, 2004.  Ms. Carlson does not
> qualify to submit an offer in compromise.

Id. at 12-13.

In analyzing the balancing of the interests of the taxpayer
and the IRS, the Service noted that

> Ms. Carlson proposed an offer in compromise as a less
> intrusive means to satisfy her liability.  She did not
> qualify to submit an offer due her lack of compliance
> with required filings and possible estimated tax
> payments.  Ms. Carlson was given an opportunity to
> become compliant with filing and payment requirements.
> Her representative agreed at the conference that the
> six week time frame given to comply was reasonable.
> The taxpayer did not file outstanding returns, provide
> current income information, or provide any other
> information.  No viable collection alternative was
> proposed.  Filing of the Notice of Federal Tax Lien and
> issuance of the Final Notice and the proposed levy
> action are necessary to provide for the efficient
> collection of the taxes despite the potential
> intrusiveness of enforced collection.

Id. at 13.

7

## C.    Federal Jurisdiction

This Court has subject matter jurisdiction pursuant to 26 U.S.C. §§ 6320(c) and 6330(d)(1).

## II.  DISCUSSION

### A.    Standard of Review

The Internal Revenue Restructuring and Reform Act of 1998, which created the due process hearings, provides that a taxpayer may appeal a decision arising from such a hearing.  See 26 U.S.C. § 6330(d).  The statute is silent as to the standard of review. Olsen v. United States, 326 F. Supp. 2d 184, 187 (D. Mass. 2004) (Lindsay, J.).  As noted by Judge Lindsay, although the First Circuit has yet to address the applicable standard of review,

> [t]he legislative history accompanying the statute, . . . indicates that where, as here, the appellants underlying tax liability is not at issue, "the appeals officer's determination as to the appropriateness of the collection activity will be reviewed using an abuse of discretion standard of review."  H. Rep. No. 105-599 at 266 (1998).

Id. at 187 (noting that other courts have reviewed decisions by appeals officers under the abuse of discretion standard, citing Dudley's Commercial and Indus. Coating, Inc. v. United States, 292 F. Supp. 2d 976, 985 (M.D. Tenn. 2003); Kitchen Cabinets, Inc. v. United States, 2001 WL 237384, *2 (N.D. Tex. Mar. 6, 2001) (unreported decision); TTK Mgmt. v. United States, 2000 WL 33122706, *1-2 (C.D. Cal. Nov. 21, 2000) (unreported decision)).

**B.    The Internal Revenue Service Restructuring and Reform Act of 1998**

In 1998, following a year of congressional investigations and hearings concerning the IRS, President Clinton signed the Internal Revenue Service Restructuring and Reform Act into law. Mesa Oil, Inc. v. United States, 2000 WL 1745280, *2 (D. Colo. Nov. 21, 2000) (unreported decision).  This law "change[d] the way in which the IRS governs itself, institute[d] new taxpayer rights, . . . . fortif[ied] taxpayer rights and improve[d] customer service."  Id.  "The Congress believed that the former IRS organizational structure was one of the factors contributing to the inability of the IRS to properly serve taxpayers and the proposed structure would help enable the IRS to better serve taxpayers and provide the necessary level of services and accountability to taxpayers."  Joseph J. Thorndike, Reforming the Internal Revenue Service: A Comparative History, 53 Admin. L. Rev. 717, 775-76 (2001) (quoting 1998 Staff of J. Comm. on Taxation, 105th Cong., General Explanation of Tax Legislation Enacted in 1998, at 21 (J.Comm. Print 1998)) (internal quotation marks omitted).

Under section 6320, the IRS must give the taxpayer written notice of the filing of a notice of lien under section 6323.  26 U.S.C. § 6320(a)(1).  The statute sets out the time and method for the notice, as well as the information that must be included. Id. at § 6320(a)(2).  The taxpayer then has a right, within 30

days, to request a hearing with the IRS Office of Appeals.  <u>Id.</u>
at § 6320(a)(3)(B).  "The hearing under this subsection shall be
conducted by an officer or employee who has had no prior
involvement with respect to the unpaid tax . . . . before the
first hearing under this section or section 6330."  <u>Id.</u> at §
6320(b)(3).

At the hearing, "[t]he appeals officer shall . . . obtain
verification from the Secretary that the requirements of any
applicable law or administrative procedure have been met."  <u>Id.</u>
at § 6330(c)(1).  <u>See</u> § 6320(c).  The taxpayer may raise any
relevant issues, including offers of collection alternatives such
as offers in compromise.  <u>Id.</u> at § 6330(c)(2).

In formulating her determination, the appeals officer is
required to consider: (1) whether the requirements of any
applicable law or administrative procedure have been met; (2) any
issues raised by the appellant relating to the unpaid tax,
including offers of collection alternatives such as offers in
compromise; and (3) whether the proposed collection action
balances the need for the efficient collection of taxes with the
taxpayer's legitimate concern that the collection action be no
more intrusive than necessary.  <u>Id.</u> at § 6330(c).

**C.    The Motion to Affirm**

Under section 6330, Carlson has a right to judicial review
of the determination made at the due process hearing.  26 U.S.C.

10

§ 6330(d); <u>Olsen</u>, 326 F. Supp. 2d at 188 (noting that "[u]nder § 6330(c), the scope of [the district court's] review is limited to whether the appeals officer abused her discretion when, after holding a collection due process hearing, she upheld the proposed enforcement action.").

The government argues that this Court should affirm the determination of the IRS Appeals Officer "because the Appeals Officer verified that the requirements of any applicable law or administrative procedure have been met, considered all issues raised at a collection due process hearing, and determined the Notice of Federal Tax Lien is proper and that enforced collection of the taxpayer's past-due federal tax liabilities is appropriate." Appellee's Mem. in Supp. of Mot. to Affirm ("Gov't Mem.") [Doc. No. 4] at 1.

1.  **The Appeals Officer did not abuse her discretion, and she held a fair and impartial hearing.**

Carlson alleges in her complaint that the appeals officer was not impartial because she was motivated by the "desire to promptly close the hearing," Compl. ¶¶ 14-16, and that such failure violated her rights under the Fifth Amendment of the United States Constitution and the rights granted to her under the Internal Revenue Code. <u>Id.</u> ¶ 18.

The Internal Revenue Restructuring and Reform Act defines "impartial officer." Pursuant to 26 U.S.C. § 6330(b)(3), the statute states:

11

"Impartial officer -- The hearing under this subsection shall be conducted by an officer or employee who has had no prior involvement with respect to the unpaid tax . . . before the first hearing under [section 6330] or section 6320." 26 U.S.C. § 6330(b)(3). As noted by the government, "[t]he Appeals Officer had no prior involvement with respect to the past-due liabilities in this case and there is no allegation to the contrary." Gov't Mem. at 7 (internal citation omitted). Thus, the Appeals Officer was impartial. 26 U.S.C. § 6330(b)(3). See Harrell v. C.I.R., 86 T.C.M. (CCH) 378 (2003) available at 2003 WL 22137919 ("The operative terms of section 6330(b)(3) provide that 'impartial' concerns the Appeals officer's prior involvement with respect to the unpaid tax before the hearing.").

In addition, the government argues that the Appeals Officer "did not act in a biased manner." Gov't Mem. at 7. The government points out that the Appeals Officer complied with the law, considered the factors as enumerated in section 6330(c), and was within her discretion when she denied Carlson's request for an additional extension to file her late returns so she would be able to pursue an offer in compromise. Id. at 8-10. The government notes that the Appeals Officer "in fact, gave Carlson substantial time and notice to file her delinquent federal tax returns before and after the [due process] hearing." Id. at 7-8 (noting that the "Appeals Office informed Carlson almost two

months before the hearing that she had to file her income tax

returns for 2001 through 2003 before any collection alternative

could be considered").

In support of its argument, the government points to the

Summary and Recommendation:

> Section I . . . demonstrates that the Appeals
> Officer reviewed Carlson's administrative file and
> concluded that the information contained in the file
> showed that the IRS followed the law and administrative
> procedures. . . . The Appeals Officer determined that a
> statutory lien had arisen upon Carlson's failure to pay
> the past-due liabilities after notice and demand was
> made. The Appeals Officer also determined that the
> Notice of Lien Filing was sent according to law, and
> that the requisite final notice of intent to levy was
> issued prior to commencement of collection action. . .
> . Indeed, Carlson's pleading raises no issue as to the
> Appeals Officer's verification that the requirements of
> any applicable law or administrative procedure have
> been met.
> Section II . . . demonstrates that the Appeals
> Officer considered the issues raised by Carlson, which
> were limited only to collection alternative precluded
> from consideration by Carlson's own failure to file her
> tax returns and other financial information. . . .
> Section III . . . demonstrates that the Appeals
> Officer balanced the need for efficient collection of
> taxes with the concern that the collection action be no
> more intrusive than necessary.  The Appeals Officer
> considered the alternatives proposed by Carlson, to the
> extent that they could be considered because of
> Carlson's failure to file her tax returns for tax years
> 2000 through 2003; no viable collection alternative was
> ever proposed. Collection activity by the IRS was made
> necessary by Carlson's repeated failure to meet her
> filing obligations in the [due process hearing]
> context, and, of course, her filing requirements under
> the law, as well as her failure to offer any viable
> alternative for the collection of her past-due
> liabilities here.

Id. at 9-10.

13

Carlson argues that the "unambiguously expressed intent of Congress" in enacting the Internal Revenue Restructuring and Reform Act of 1998 was to

> "Protect Taxpayers Subject to Audit or Collection Activities", to grant taxpayers an impartial hearing at which they can file an Offer in Compromise and instruct the Service that it "should be flexible in finding ways to work with taxpayers who are sincerely trying to meet their obligations and remain in the tax system" and to "make it easier for taxpayers to enter into offer-in-compromise agreements."

Appellant's Mem. at 5-6 (citing Act's legislative history). Carlson contends that the Appeals Officer failed to "be flexible" and did not "make it easier for [her] to enter into [an] offer-in-compromise agreement." See id. at 6-7. The only evidence Carlson points to support her argument that the Service failed to resolve the matter in good faith is that:

> The inadequacy of . . . [the] record does not provide sufficient information as to the reason of the reasons [sic] why the Service failed to grant the necessary additional time to the Plaintiff. The paucity of information however, evidence a predisposition of the Service to summarily dispose of the issues before it.

Appellant's Mem. at 11. She goes on to conclude that: "These facts lead to a sole conclusion that the Service acted to expeditiously close this matter for its administrative convenience in derogation of the rights granted to the Plaintiff." Id.

The only legal case offered in support of this argument is Mesa Oil. Id. at 10-11. In Mesa Oil, similarly an appeal of a

14

due process hearing, the federal district court remanded the case for further consideration. 2000 WL 1745280 at *1. The court found that the Appeals Officer "abused her discretion in concluding that the proposed collection action balance[d] the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary," in light of the fact that "the levy would put Mesa out of business." Id. at *3. In doing so, the court noted that the Determination was lacking information as to "whether the collection officer considered appropriate factors given that Mesa Oil is an ongoing business." Id. at *4. Thus the court "remand[ed] for consideration of the appropriate factors and a fully elucidated Determination that explains the reasons for the conclusion." Id. at *5.

The matter before this Court is distinguishable in that, unlike Mesa Oil, here there is no question as to why an alternative was not considered. Carlson had failed to file the paperwork necessary, including her late returns, a prerequisite to acceptance of an offer in compromise. There is no need to remand -- the Appeals Officer was clear as to why the levy was upheld.

In addition to her "lack of good faith" argument, Carlson contends that the IRS abused its discretion by failing to provide a full, fair and impartial hearing. Appellant's Mem. at 11-12.

She notes that "Ms. Boudreau did not negotiate with Ms. Carlson because she gave no consideration to Ms. Carlson's request for an additional thirty days to complete all of the requisite returns and financial statements necessary for her offer-in-compromise." Id. at 12.

In her opposition, Carlson cites the Internal Revenue Manual which notes that "[i]t is an accepted business practice to resolve these issues through negotiation and compromise." Id. (citing Internal Revenue Manual § 5.8.1.1). She also notes that, according to the manual, "[t]he Commissioner is authorized to grant a reasonable extension of time for filing any return . . . such extensions of time shall not be granted for more than 6 months." Id. at 13 (citing Internal Revenue Manual § 1.6081-1).

Carlson's reliance on the Internal Revenue Manual as support for her appeal is misplaced. As noted in Olsen,[2] "[c]ourts have held . . . that 'the Internal Revenue Manual confers no rights on taxpayers,' and that 'the procedures contained therein are intended only to aid in the internal administration of the IRS.'" 326 F. Supp. 2d at 188 n.2 (citing United States v Horne 714 F.2d 206, 207 (1st Cir. 1983) ("The assessment made against the defendant complied with all relevant statutes and regulations. Whether or not it also complied with the rules contained in the

---

[2] Interestingly, Timothy Burke, the attorney representing Carlson, also represented the plaintiff in Olsen v. United States.

16

Internal Revenue Manual has no bearing on its validity. The provisions in the Manual are not codified in the Code of Federal regulations. Even if they were codified, the provisions would not be 'mandatory.'") and Chavez v. United States, 2004 WL 1124914, *4 (W.D. Tex. May 18, 2004)).

Regardless of the weight or lack thereof to be granted to the internal procedures of the IRS, the crux of Carlson's argument is that she was deprived of a fair determination because she was not given an additional extension beyond the six weeks following her due process hearing, she was deprived of a fair determination. Yet, it was Carlson's failure to prepare her returns -- despite ample notice that she would need to complete those returns in order to qualify for a flexible alternative -- that precluded her from attaining the determination she desired.

In Rodriquez v. Commissioner of Internal Revenue, 85 T.C.M. (CCH) 1414 (2003) available at 2003 Tax. Ct. Memo LEXIS 151, *11, the United States Tax Court noted that

> [t]he Commissioner's decision not to process an offer
> in compromise or a proposed collection alternative from
> taxpayers who have not filed all required tax returns
> is not an abuse of discretion. . . . The decision not
> to accept the offer in compromise submitted by
> petitioner on account of her failure to file all
> required returns was an entirely reasonable exercise of
> the Commissioner's discretion in administering the
> offer in compromise program.

In her brief, Carlson seems to imply that she first learned of the need for her late returns to be filed on October 14, 2004,

17

at the due process hearing.  See Appellant's Mem. at 12-13.  A
review of the correspondence in the record refutes this half-
hearted contention.  As early as August 18, 2004, the IRS Appeals
Office had informed Carlson that in order for a collection
alternative to be considered she must be current in the filing of
her federal income tax returns.  R. at 29.  That same letter set
a deadline of September 17, 2004 for her to file her missing
returns.  Id.

On September 8, 2004, another letter was sent, again noting
the need for the returns in order for a collection alternative to
be considered.  Id. at 23.  This letter requested the late tax
returns to be filed within 14 days.  Id.

By the date of the due process hearing, Carlson already had
failed to meet two deadlines.  At the face-to-face conference,
the parties agreed to an additional 45 days for Carlson to file
the information.  Although reasonable minds may disagree as to
whether the Appeals Officer should have given her yet again more
time to file the returns, she did not abuse her discretion by
refusing to grant an extension.

Finally, Carlson argues that the Administrative Record and
Determination Letter are inadequate and urges this Court to
remand the matter.  Appellant's Mem. at 7-10 (citing Borges v.
United States, 317 F. Supp. 2d 1276 (D.N.M. 2004) and Mesa Oil,
2000 WL 1745280).  Carlson notes that,

> Ms. Boudreau does not cite any Internal Revenue Manual,
> Revenue regulation or procedure to justify her
> determination that a reasonable time of six weeks was
> allowed and that no further time need be granted for
> Ms. Carlson to prepare the requisite information to
> make an offer-in-compromise.

Appellant's Mem. at 7.

In Borges, the court considered whether the Appeals Officer had properly performed a financial analysis. 317 F. Supp. 2d at 1284 ("The record before the Court is insufficient to determine what financial analysis was performed by the Appeals Officer."). Here, as discussed above, the record is sufficient to determine whether the Appeals Officer abused her discretion in denying Carlson more time to get her late returns to the IRS, a prerequisite for consideration of an offer in compromise. It is undisputed that the first notification informing Carlson of the need for the delinquent returns was dated August 18, 2004, almost two months before the hearing, and over three months before the November 30, 2004 deadline in question. See Mesa Oil, 2000 WL 1745280 at *18-19 (noting that "[w]hile a full stenographic record is not required, there must be enough information contained in the documentation created by the IRS for a court to draw conclusions about statutory compliance and whether the [Appeals Officer] abused his or her discretion . . . . the lack of a record makes it impossible to tell . . . what factors were considered by the [Appeals Officer] in making her Determination.").

19

### D.    Failure to State a Claim

The government also argues that Carlson's appeal should be dismissed for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment.  In a two paragraph section of its memorandum, the government argues that Carlson fails to state a claim upon which relief can be granted because she does not challenge the Appeals Officer's determination, but rather focuses on the Appeals Officer's denial of an extension to file her late returns.  Gov't Mem. at 10-11

In fact, Carlson complains that "[t]he hearing was not properly held due to the bias of the [Appeals] Officer," Compl. ¶ 16 (Count I); and that the failure "was violative of the rights granted to [her] by the Internal Revenue Code and the Fifth Amendment to the United States Constitution."  Id. ¶ 18 (Count II).

Although this Court now holds that "Carlson received due process," Gov't Mem. at 10, were all of the assertions in the Complaint taken as true, she has stated a claim.  Thus, it would be inappropriate to grant the government's motion to dismiss.

### ORDER

For the reasons stated, the government's motion to dismiss for failure to state a claim is DENIED.  The government's motion to affirm the Appeals Officer's Determination is GRANTED.

SO ORDERED.

/s/ William G. Young

_____
WILLIAM G. YOUNG
CHIEF JUDGE